## HEBBARD v. AMERICAN ZINC, LEAD & SMELTING CO. et al.

### No. 13418.

Circuit Court of Appeals, Eighth Circuit.

May 14, 1947.

340

Henry Warten and Helen E. Redding, both of Joplin, Mo. (Kelsey Norman and Emerson Foulke, both of Joplin, Mo., on the brief), for appellant.

Paul E. Bradley and Allen McReynolds, both of Joplin, Mo. (Charles M. Seymour, of Knoxville, Tenn., and Robert Ames Norton, of Stamford, Conn., on the brief), for appellees.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The question is whether the appellant, Hebbard, as assignor, is entitled to the rescission of two contracts for the assignment of a patent and to an accounting of profits realized by the assignee, Minerals Beneficiation Incorporated, and its alleged successor in interest, American Zinc, Lead & Smelting Company. The alleged ground for rescission of the contracts is complete failure of performance.

One of the contracts sought to be rescinded was executed in the early part of 1932. After recitals that Minerals Beneficiation Incorporated was engaged in the development and introduction into public use of certain machines, devices, apparatus, and processes relating to the handling, treating, concentrating, and beneficiation of minerals, known as the Wuensch process; that Hebbard had been and was employed by the corporation, and in such employment had been and necessarily would be in a position to learn of the corporation's inventions, and would be engaged in devising and developing improvements upon them, and in inventing and discovering other machines, devices, apparatus, and processes; that the corporation desired to secure to itself the exclusive right in and to all discoveries, inventions, and improvements theretofore or thereafter made by Hebbard; and that Hebbard desired to continue in the employment of the corporation, the contract continued:

"Now, Therefore, in consideration of the continuation of my employment by the said Minerals Beneficiation Incorporated, and the further sum of One Dollar ($1.00) to me in hand paid, the receipt of which is hereby acknowledged, and other valuable considerations, I, the said................ have covenanted and agreed to sell, assign and transfer unto the said Minerals Beneficiation Incorporated, its successors and assigns, all my right, title and interest in and to any and all inventions, discoveries, machines, devices, apparatus, processes and improvements to any thereof, which I have made, discovered or invented, or which I may hereafter make, discover or invent while in the employ of said Minerals Beneficiation Incorporated, relating to the business of said company."

In following paragraphs Hebbard agreed, on request of the corporation, fully to disclose to it all inventions, discoveries, and improvements made by him, and, on request, to execute any and all applications for and assignments of patents necessary to carry the provisions of the agreement into effect. Hebbard further agreed, upon the termination of his employment by the corporation, regardless of the reason therefor, to disclose to the corporation all ideas and inventions relating to the corporation's business made by him prior to the termination of his employment, and that he would not after leaving the corporation disclose to any person or concern any such invention or discovery.

On August 10, 1936, Hebbard, Victor Rakowsky, and Ray W. Arms filed in the of-

fice of the Commissioner of Patents an application for a patent on an improvement on the Wuensch process. In affidavits accompanying the application and specifications for the patent and in supporting affidavits filed several years later the applicants made oath that they were the joint inventors of the process and apparatus for which the patent was sought. In October 1936 Rakowsky, Arms and Hebbard assigned to Minerals Beneficiation Incorporated their right, title, and interest in the invention described in their application for the patent and in the patent and in all future applications by them for patents based upon the invention. The assignors directed the Commissioner of Patents to issue any and all letters patent to Minerals Beneficiation Incorporated. Consideration for the assignment was the sum of $5 and "other valuable and sufficient consideration," receipt of which was acknowledged. Patent No. 2,176,189 was granted to Minerals Beneficiation Incorporated on October 17, 1939. The invention proved to be valuable in the mining industry. This assignment is the second contract which Hebbard seeks to rescind.

In the summer of 1931 C. Erb Wuensch, a mining and metallurgical engineer, was employed in the management of a mining corporation at Waco, Missouri. The corporation and Wuensch maintained a small laboratory in which Wuensch was engaged in devising and developing an apparatus and process for cleaning and concentrating mineral ores of different specific gravities, for which he had pending applications for patents. On occasion Wuensch employed Hebbard to make drawings of apparatus which Wuensch devised. The Wuensch process and apparatus had attracted the attention of others interested in the mining industry and had met with some small success in coal-mining operations. Among those interested were the operators of nearby coal mines, an engineering firm in Chicago engaged in the designing of coal-mining machinery, Ray W. Arms, an employee of the firm, and one Victor Rakowsky. Rakowsky and Arms were mining and metallurgical engineers. Wuensch and Rakowsky, the firm employing Arms, and certain operators of coal mines agreed on the incorporation of Wuensch's laboratory under the name of Minerals Beneficiation Incorporated, Wuensch to assign to the corporation his inventions, and the corporation to engage, among other things, in the improvement and introduction into public use of the Wuensch process and apparatus. The laboratory was moved to Joplin, Missouri, where its operations were continued pending incorporation. In January 1932 Hebbard was employed at the laboratory to make mechanical drawings. Hebbard testified that he was employed only in the capacity of a draftsman. While Wuensch agreed that this was true of Hebbard's original employment, he said that Hebbard was a skilled mechanical engineer, that all of the employees in the laboratory were greatly interested in its experimental work, and that all of them took part in all of the work in which the laboratory was engaged.

Minerals Beneficiation Incorporated received a certificate of incorporation on February 10, 1932. The employees of the laboratory automatically became employees of the corporation. All of them were required to sign the contract of 1932. This action came on for trial in October 1944. The contract signed by Hebbard was not dated, and no witness was able to give the exact date of its execution by Hebbard. Rakowsky, who was president of Minerals Beneficiation Incorporated and who prepared the contract, testified that it was signed within a day or two after the incorporation of Minerals Beneficiation Incorporated. Heilman, an employee of the laboratory, thought that the contract which he signed was presented within a day or two of the incorporation of Minerals Beneficiation Incorporated. It seems certain that all contracts were presented to all employees on the same day. Hebbard testified that he thought he signed the contract in the latter part of March 1932.

Essentially the Wuensch process consisted of a means of feeding fragmentary ores into a vessel containing a liquid separating column, the specific gravity of which column gradually increased from top to bottom so that the lighter fragmentary materials would be floated on or near the top of the separating column, while the heavier materials would sink to the bottom

of the column; a means for continuously removing the lighter materials from the top and the heavier materials from the bottom of the column, together with a means of maintaining the differential density of the column. Wuensch had failed in his effort to devise a practicable means of removing heavier materials from the bottom of the liquid column. That Hebbard devised and disclosed to his employer the needed mechanical means for removing the heavier concentrates from the bottom of the liquid column and that his contribution was a major improvement on the Wuensch process and a most important factor in the success of the invention for which a patent was subsequently issued on the joint application of Hebbard, Rakowsky, and Arms was not denied by appellees.

A question of fact much disputed at the trial and resolved in favor of appellees by the District Court was whether Hebbard devised his improvement while employed by Wuensch as a mechanical draftsman, or after the incorporation of Minerals Beneficiation Incorporated while employed by the corporation to invent and devise improvements upon the Wuensch process. Hebbard was the only witness who could have known the exact time of his discovery. At the trial he was unable to testify with certainty. He gave it as his best recollection that he made the discovery the latter part of February or the first of March, 1932. He offered in evidence two drawings of his improvement which he identified as the first and second drawings made. He said that while engaged as a draftsman he had observed the efforts of Wuensch and others in the laboratory and their inability to solve the problem of devising a satisfactory mechanical means for removing the heavier concentrates from the bottom of the liquid separating column. A solution occurred to Hebbard. He went to the laboratory early one morning and made the drawings of his improvement and exhibited them to Rakowsky who in turn discussed them with Wuensch. The first of these drawings was dated April 27, 1932, and initialed by Hebbard, and the second was dated May 3, 1932, and likewise initialed. The first drawing also bore the endorsement that it had been witnessed by Rakowsky, Wuensch, Hebbard, How-

ard, and Heilman on April 27, 1932, and that a model made from the drawing had been witnessed by Heilman, Howard, and Hebbard on May 6, 1932, and by Ray W. Arms on May 17, 1932.

Hebbard was unable to give any satisfactory explanation of the significance of the dates on the drawings followed by his initials. Heilman's recollection was that the certificate showing the date on which the drawing was witnessed was made within a day or two of the first exhibition of the drawing. Howard was not called as a witness. Rakowsky's testimony agreed with that of Heilman. All witnesses admitted that a model made from the drawing was exhibited or tested on the date shown on the drawing. Hebbard had applied for patents for other inventions in the past and knew of the importance of making a record of the date of the making of the original drawings and models.

We conclude that the preponderance of the evidence is in favor of the trial judge's finding that Hebbard discovered his improvement on the Wuensch process when he was employed by the Minerals Beneficiation Incorporated for the specific purpose of devising and inventing improvements on that process. On this finding the trial court was correct in its conclusion of law that Minerals Beneficiation Incorporated was in equity, in the absence of a contract with Hebbard providing otherwise, the owner of the improvement on the Wuensch process which Hebbard invented. 5 Williston on Contracts, § 1643(A); United States v. Dubilier Condenser Corp., 289 U.S. 178, 53 S.Ct. 554, 77 L.Ed. 1114, 85 A.L.R. 1488; Standard Parts Co. v. Peck, 264 U.S. 52, 59, 44 S.Ct. 239, 68 L.Ed. 560, 32 A.L.R. 1033; National Development Co. v. Gray, 316 Mass. 240, 55 N.E.2d 783, 153 A.L.R. 973.

Hebbard claims that he was the sole inventor of the process and apparatus for which the patent assigned to Minerals Beneficiation Incorporated by the contract of 1932 was issued. The overwhelming weight of the evidence sustains the trial court's finding to the contrary; but, if the fact was as Hebbard claims, it would follow from the authorities, supra, that Minerals Beneficiation Incorporated was in-

equity entitled to the exclusive enjoyment of the patent, since the invention for which it was issued was made by Hebbard while he was employed to make it.

There remains for consideration Hebbard's contentions concerning the interpretation of the contracts which he now seeks to rescind. The argument on this phase of the case is that the contract of 1932 was not a sale or assignment of any invention or improvement on the Wuensch process made by Hebbard while in the employ of Minerals Beneficiation Incorporated, but a contract in the form of an option binding Hebbard to assign to his employer any such invention or improvement when discovered, and binding the optionee, Minerals Beneficiation Incorporated, to pay Hebbard a valuable consideration for the assignment when made; that the assignment of 1936 was made by Hebbard in the performance of his obligation under the option contract of 1932; and that the assignee has failed to perform its obligation under the option contract of 1932 to pay Hebbard the valuable consideration for his interest in the invention. Asserting that the contract of 1932 was ambiguous in that it failed clearly to express the consideration, which by its terms Minerals Beneficiation Incorporated was obligated to pay Hebbard upon the making of any assignment requested by Minerals Beneficiation Incorporated, Hebbard offered and the trial court received, subject to objection of the appellees, evidence to show that the words "other valuable considerations," as used in the paragraph of the contract quoted above, referred to the consideration that Minerals Beneficiation Incorporated was obligated to pay for any assignment made by Hebbard.

Hebbard said that when he signed the contract in 1932 he inquired of Rakowsky the meaning of the words "other valuable considerations." Rakowsky explained that the language referred to the consideration which Minerals Beneficiation Incorporated was obligated by the contract to pay to Hebbard for any assignment of an improvement or invention which Hebbard made. Hebbard continued in the employment of Minerals Beneficiation Incorporated, making models of the Wuensch apparatus as improved by him and testing the operations with ores from various mines, until Minerals Beneficiation Incorporated suspended business at the end of 1933. There is no evidence that during that time anything was said to Hebbard about compensation for his improvement, or that Hebbard made any claim for compensation. Hebbard was employed by mining companies through 1934 and until the fall of 1935. During this time he was not concerned with the Wuensch process.

In the meantime Rakowsky had interested the American Zinc, Lead & Smelting Company in the improved Wuensch process and apparatus, and arranged for its trial at the mines of the American Zinc Co., a subsidiary of the American Zinc, Lead & Smelting Company, at Mascot, Tennessee. Hebbard was employed and paid by the Zinc Company in supervising the construction of a pilot plant and later in the construction of an operating plant at Mascot until the end of 1937. Thereafter, similar employment was obtained for him by Rakowsky or the Smelting Company at the mines of Butler Brothers in Minnesota and at the mines of the Eagle-Picher Company in Oklahoma. Hebbard was employed by these companies until the fall of 1939.

Hebbard testified that before going to Mascot, while at Mascot, and later while employed in Minnesota and Oklahoma he discussed with Rakowsky the question of his compensation for the improvement devised by him. According to Hebbard in all of these conversations Rakowsky told him that the value of his improvement had not been determined, that no royalties had been received from any of the mining companies using it, and assured him that when the value of the invention had been determined, adequate compensation would be paid to him. The last conversation, according to Hebbard, occurred in 1939 when Hebbard discovered that the Eagle-Picher Company was paying a royalty for the use of the invention. Rakowsky then told Hebbard that the matter of his compensation would have to be decided by Young who was president of the Smelting Company.

Rakowsky denied that he had any conversations with Hebbard concerning the

meaning of the words "other valuable considerations" at the time the contract of 1932 was signed. He denied that he ever discussed with Hebbard the question of his right to further compensation under the contract of 1932. He testified that the conversations on the occasions mentioned by Hebbard concerned only Hebbard's request to Rakowsky to use his influence with Hebbard's employers to get an increase in Hebbard's monthly salary.

Hebbard opened negotiations with Young by correspondence. A number of letters passing between Hebbard and Young were introduced in evidence by Hebbard as tending to show a promise, presumably of the Smelting Company, to pay for his invention. None of the letters passing between Hebbard and Young tends to support Hebbard's version of his conversations with Rakowsky. In none of them did Hebbard make any reference to the contract of 1932. On the contrary, in all of the letters Hebbard explained to Young that his living expenses had been in excess of the salary he received from the company by which he was employed. In some of them he detailed the expenses he had incurred in moving his family from one place of employment to another and in driving his automobile to and from his place of work. He claimed credit for the improvement of the Wuensch process, suggested that he had other improvements in mind which he was obligated to disclose, and that he should receive recognition for his services by reimbursement of the expenses which he had incurred. In one of the letters he advanced the idea that because of his contribution to the success of the invention and the inadequacy of the salary he had been receiving from his employers he ought to be given a small share of the royalties received from licenses under the patent. In response to these letters Young made payments to Hebbard aggregating the sum of $1,900.

Negotiations between Young and Hebbard culminated in a conference in the office of Young at St. Louis at which Hebbard, Young, and counsel for Young's company were present. A memorandum of this conference was reduced to writing on October 23, 1941, and signed by Hebbard and Young. Nothing in the memorandum refers to any right to Hebbard claimed under the contract of 1932. In short, the memorandum provided for the payment to Hebbard of the sum of $500 cash, recited past payments in the sum of $1,900, and provided for the preparation of a contract between Hebbard and the American Zinc, Lead & Smelting Company under which, beginning in January 1942, the company would pay to Hebbard $100 a month for a period of three years, all of the above recited payments for the purpose of reimbursing Hebbard for expenses incurred by him in connection with his work in developing the Wuensch apparatus, and in consideration of an agreement of Hebbard to disclose to the company complete details of any future invention made by him applicable to the Wuensch apparatus, and an agreement by him to assign all such inventions to Minerals Beneficiation Incorporated, subject to the shop rights of Young's Company and its subsidiaries or of any company by which Hebbard was employed. The expense of procuring patents for Hebbard's inventions and discoveries was to be paid by the company.

A contract in accordance with the memorandum was prepared by Young. Hebbard declined to sign it and brought this action on May 20, 1942. Young testified that he received his first knowledge of Hebbard's claim from the complaint filed in the action.

The trial court reached the conclusion that the evidence offered in explanation of the contract of 1932 was inadmissible, and this ruling is assigned as error. We think the question unimportant. For we agree with the trial court that, if it could be said that the contract was ambiguous and the evidence offered by Hebbard was admissible to clarify the ambiguity, the fair preponderance of the testimony is in favor of appellees. Hebbard's version of his conversations with Rakowsky is not only denied by Rakowsky, but is contradicted by Hebbard's correspondence with Young. His testimony is wholly inconsistent with the situation of the parties at the time of the execution of the contract of 1932, and with their conduct for many years following its execution. When the

contract of 1932 was signed by Hebbard, Minerals Beneficiation Incorporated was engaged in the improvement of an invention, and Hebbard was employed to use his skill in that work. Throughout the years during which the work was carried on Hebbard was paid for the time he devoted to it. His inventions and improvements were in equity the property of his employer. In the light of these facts, the reasonable interpretation of the contract of 1932 is that in return for continued employment by Minerals Beneficiation Incorporated in improving the Wuensch process, Hebbard agreed to assign to Minerals Beneficiation Incorporated on request, and not for further consideration, any improvement on the process he might devise while employed. More than four years after the execution of the contract of 1932, Hebbard did, on request of his employer, make the assignment which he had agreed to make. This action is in itself a refutation of his claims.

Whether, if all Hebbard's contentions in this case were sustained, his remedy was an action for rescission of the contracts or an action at law for damages for breach of contract we need not decide.

Judgment affirmed.