**HIRSHHORN v. MINE SAFETY APPLI-
ANCES CO. et al.**
Civ. A. No. 2811.

District Court, W. D. Pennsylvania.
Feb. 27, 1948.

William H. Eckert (of Smith, Buchanan & Ingersoll), of Pittsburgh, Pa., for plaintiff.

E. W. Marshall and Paul E. Hutchinson (of Reed, Smith, Shaw & McClay), and W. Denning Stewart (of Rose, Eichenauer, Stewart & Rose), all of Pittsburgh, Pa., for defendants.

GOURLEY, District Judge.

Joseph H. Hirshhorn, the plaintiff above named, on his own behalf and on behalf of all other stockholders of Carbon Monoxide Eliminator Corporation, has instituted a stockholders' derivative action against Mine Safety Appliances Company, Carbon Monoxide Eliminator Corporation, Catalyst Research Corporation, and certain officers and directors of these corporations.

The plaintiff seeks an injunction and an accounting for profits which are based on alleged acts of fraud on the part of Mine Safety Appliances Company, Carbon Monoxide Eliminator Corporation, Catalyst Research Corporation, and the individual defendants named in the complaint, who

act either as officers or directors for one or all of said defendant companies.

Reference will be made to Mine Safety Appliances Company as "Mine Safety", Carbon Monoxide Eliminator Corporation as "Carbon Monoxide", and Catalyst Research Corporation as "Catalyst".

The plaintiff since 1931 has been a stockholder in Carbon Monoxide, the value of his investment being approximately $200,000.00. Mine Safety has been and still is engaged in the business of manufacturing and selling industrial safety devices. Carbon Monoxide has been engaged in research for the development and improvement of breathing apparatus used at sea, in high altitudes, and other kindred uses. Catalyst has been engaged in similar research. The majority of stock or the controlling interest in Catalyst is held by Carbon Monoxide.

Plaintiff contends that Mine Safety and the individual defendants, who were officers and directors of either one or all of said defendant companies, pursuant to a plan and conspiracy, acquired control of Carbon Monoxide and Catalyst, and operated said companies as mere instrumentalities to enable Mine Safety to use the assets and powers of Carbon Monoxide and Catalyst for its own benefit, gain and advantage.

Plaintiff demands judgment for relief, inter alia, as follows:

(a) That the Court adjudge and decree that Carbon Monoxide and Catalyst have been managed by Mine Safety and the individual defendants in the interest of Mine Safety, and at the expense of Carbon Monoxide and Catalyst, to the loss and detriment of the plaintiff and other stockholders of Carbon Monoxide and Catalyst.

(b) That the Court adjudge and decree that large losses have been sustained by Carbon Monoxide and Catalyst as a result of the misconduct of its affairs by Mine Safety, and by the individual defendants, and that an accounting be ordered to determine the amount of such losses, and an appropriate decree entered in connection therewith.

(c) That the Court adjudge and decree that Mine Safety is responsible and liable to Carbon Monoxide for all pecuniary gain accruing to it through use of a breathing apparatus which embodies an invention made by Dr. Carey B. Jackson, and that Mine Safety be required to account for and pay over to Carbon Monoxide all gains and profits realized therefrom.

(d) That the Court adjudge and decree that Mine Safety is responsible and liable to Catalyst for all pecuniary gain accruing to Mine Safety which resulted from the appropriation of the "Helium Leak Detector" by Mine Safety, and that Mine Safety be required to account for and pay over to Catalyst all gains and profits realized therefrom.

(e) That the Court adjudge and decree a certain license agreement entered into between Carbon Monoxide and Mine Safety to be a fraud upon Carbon Monoxide, and the owners of its stock, and that said license agreement be declared null and void.

(f) That Mine Safety, its officers, directors, agents and employees be enjoined from in any manner dealing with the securities or property of Carbon Monoxide, for the purpose of advancing the interest of Mine Safety, or in any manner other than in the independent interest of Carbon Monoxide.

(g) That the plaintiff may have such and further relief as the nature of the case may require, and as the Court shall deem meet and proper.

The complaint was filed on December 7, 1943. On April 12, 1944, at the request of the Attorney General of the United States, all pleadings and papers filed in the cause were sealed and maintained in confidential status, provided, however, that said order shall not interfere with further prosecution of the case to final judgment.

On December 8, 1943, appearance was entered for all of the defendants named in the complaint by W. Denning Stewart, Esquire, and Howard Zacharias, Esquire. On October 9, 1946, appearance was entered for Mine Safety and all of the individual defendants, with the exception of W. Denning Stewart, by Elder W. Marshall, Esquire, and Paul E. Hutchinson,

Esquire, of the firm of Reed, Smith, Shaw & McClay.

Motions by the defendants to dismiss the action were denied in an opinion by the Honorable F. B. Schoonmaker, late a member of this Court and now deceased. (D.C., 54 F.Supp. 588.)

The matter now before the Court involves a motion to compel the defendants to produce and permit the plaintiff, his attorneys, accountants and agents, to inspect, copy, photograph and use in the taking of depositions in this action, the following documents, papers, books, accounts, letters, contracts, patents, assignments and other records, which the plaintiff believes constitute or contain evidence material to matters involved in this action and to be in the possession, custody or control of the defendants or some of them, and none of which are privileged:

1. All notebooks of Dr. O. G. Bennett since 1935 and of Dr. Carey B. Jackson from 1936 to date, recording notes of their work, discoveries, inventions and developments.

2. All payroll records of Mine Safety Appliances Company, Carbon Monoxide Eliminator Corporation and Catalyst Research Corporation showing the date of commencement and termination of employment by each of them of Dr. Carey B. Jackson, William P. Yant and George Wieczorek, and the compensation paid to each of them.

3. All vouchers and all cancelled checks of Mine Safety Appliances Company, Carbon Monoxide Eliminator Corporation, and Catalyst Research Corporation to Dr. Carey B. Jackson and George Wieczorek in payment of compensation.

4. All contracts of employment and for the assignment of inventions or patents or the like between Dr. Carey B. Jackson and Mine Safety Appliances Company, Carbon Monoxide Eliminator Corporation, and Catalyst Research Corporation, or any of them.

5. All contracts of employment between William P. Yant and Mine Safety Appliances Company, Carbon Monoxide Eliminator Corporation and Catalyst Research Corporation, or any of them.

6. All contracts between Mine Safety Appliances Company and either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, and all records pertaining to any lease between Mine Safety Appliances Company and either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, or any payments of rental by either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation to Mine Safety Apliances Company.

7. All accounts, books, cancelled checks, correspondence, notes, and all other records or writings evidencing or relating to all payments or credits by Mine Safety Appliances Company to Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, or by either of the latter to Mine Safety Appliances Company, and to any indebtedness, obligation or claim of Mine Safety Appliances Company to or against either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation or vice versa.

8. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson or George Wieczorek in any way relating or referring to his or their experiments and research in making potassium tetroxide, mixed peroxides of sodium and potassium, pure potassium, super oxide, catalyst potassium super oxide or other chemical in such form that it would react with exhaled air from a man to generate oxygen to allow a person to breathe in a closed system without contact with the surrounding atmosphere.

9. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson or George Wieczorek in any way relating or referring to his or their experiments and research in making or devising the mechanical means or apparatus for the use of any of the chemicals referred to in Paragraph 8 above.

10. All patents, patent applications, assignments of patents, patent licensing agreements, or similar documents involving or relating to any of the chemicals or apparatus referred to in Paragraphs 8 and

9 above, or copies thereof if the original is not in the possession, custody or control of any of the defendants.

11. All contracts of Mine Safety Appliances Company for manufacture and sale of Navy Type A-1 Oxygen Rescue Breathing Apparatus or similar device, and all records showing the profits made on such sales and the disposition of such profits.

12. All books of account, contracts, correspondence, orders, or other writings relating to commercial or peace time use or application of the chemicals and apparatus referred to in Paragraphs 8 and 9 above, or developments, outgrowths or improvements of any of those or similar chemicals or apparatus.

13. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson in any way relating or referring to his experiments and research in adding lithia hydrogen to sodium peroxide, or in making or mixing any other chemicals for use in high altitude breathing apparatus.

14. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson in any way relating or referring to his experiments and research in making or devising the mechanical means or apparatus for the use of any of the chemicals referred to in Paragraph 13 above.

15. All patents, patent applications, assignments of patents, patent licensing agreements, or similar documents involving or relating to any of the chemicals or apparatus referred to in Paragraphs 13 and 14 above, or copies thereof if the original is not in the possession, custody or control of any of the defendants.

16. All contracts of Mine Safety Appliances Company for manufacture and sale of the high altitude breathing apparatus and any of the chemicals or mechanical means or apparatus referred to in Paragraphs 13 and 14 above, or similar devices, and all records showing the profits made on such sales and the disposition of such profits.

17. The certificates evidencing all stock in Carbon Monoxide Eliminator Corporation owned directly or indirectly by any of the defendants.

The Government of the United States, for security reasons during the war, had intervened in the action. On the 13th day of January, 1947, the Attorney General represented to the Court that no need continued to exist to maintain the records in a confidential status. The Government of the United States has, therefore, not appeared or offered any objection to the motion now before the Court.

The defendants, Mine Safety and the Individual defendants, with the exception of W. Denning Stewart, object to the production of certain matters requested for the following reasons:

1. Much of the material requested is confidential research data, disclosure of which would seriously injure the business interests of the corporate defendants.

2. Most of the subject matters inquired into are entirely irrelevant and immaterial to any genuine issue in this cause.

3. Many of the demands are burdensome, oppressive, and vexatious, and seek production of voluminous records, correspondence, and writings, the assembly of which would require extensive investigation, research, and compilation and would seriously disrupt the ordinary conduct of defendants' business.

4. Plaintiff's demands are unreasonable and improper as to the character, scope, number and subject matter of numerous of the documents requested.

5. Plaintiff has totally failed by supporting affidavit, pleading or otherwise to show adequate "good cause" for the production of confidential research data and the voluminous accounting data requested.

6. Certain of plaintiff's demands relate to the sales and profits of Mine Safety and such demands are in any event premature until such time as commission by the defendants of the wrongful acts complained of has been established.

7. The plaintiff has consistently failed to designate the requested material with any reasonable degree of particularity.

W. Denning Stewart, one of the individual defendants, and as a director and sometimes secretary of Catalyst, and as president of Carbon Monoxide, presented no argument and filed no brief to the request made by the plaintiff for the production of the documents. Since counsel of record for W. Denning Stewart, Carbon Monoxide and Catalyst were not present at the time of argument, the Court required W. Denning Stewart, Esquire, who was counsel of record originally for all of said defendants and whose appearance had not been withdrawn, to explain his position to the Court. He stated that in his judgment there was no argument which could be presented, and as far as access to the records was concerned, he would recommend that within limitations said access should be given.

■ Under Rule 34 it is the primary and first duty of the parties seeking the production of material alleged to be in the custody and control of the adverse party to satisfactorily demonstrate that there exists "good cause" for such request.

Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides: "Upon motion of any party showing good cause therefor and upon notice to all other parties, the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence material to any matter involved in the action and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated relevant object or operation thereon. The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

■ Interpretation of Rule 34 must also be read with Rule 30(b) which provides: "After notice is served for taking a deposition by oral examination, upon motion seasonably made by any party or by the person to be examined and upon notice and for good cause shown, the court in which the action is pending may make an order that the deposition shall not be taken, or that it may be taken only at some designated place other than that stated in the notice, or that it may be taken only on written interrogatories, or that certain matters shall not be inquired into, or that the scope of the examination shall be limited to certain matters, or that the examination shall be held with no one present except the parties to the action and their officers or counsel, or that after being sealed the deposition shall be opened only by order of the court, or that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."

■ It appears, therefore, that the right of the plaintiff in this case to require the production of records and other material and to inspect, copy and use same is not an absolute right, but is one which can be secured and must be exercised only under definitely restricted circumstances, subject always to such limitations as the Court may direct for the protection of the parties under Rule 30(b). Under the rules, the plaintiff must make a showing as follows:

1. That there is "good cause" for the production and inspection of the desired material.

2. The material requested must be "designated" with reasonable definiteness and particularity.

3. The material must not be privileged.

4. The material must constitute or contain evidence relating to matters within the scope of the examination permitted by Rule 26(b), i. e., it must be "relevant

to the subject matter involved in the pending action."

5. The material must be within the possession, custody or control of the party upon whom demand is made.

■ The character and scope of those documents, papers, accounts, etc., production of which can be required under Rule 34 of the Federal Rules of Civil Procedure is basically defined as such material, not privileged, which constitutes or contains evidence relevant to the subject matter involved in the pending action. The "subject matter" involved in this case is of necessity determined by an examination of the plaintiff's complaint and the supporting affidavit filed in conjunction with plaintiff's motion to produce.

Examination of plaintiff's complaint discloses that this is a derivative action brought by a stockholder of Carbon for the benefit of all stockholders of Carbon. The gravemen of the complaint is that "pursuant to a plan or conspiracy," Mine Safety and the individual defendants acquired the control of Carbon and Catalyst, operated the same as mere instrumentalities and thereby caused them to sustain large losses and it, Mine Safety, to realize for itself large profits. It is alleged that pursuant to such plan and conspiracy said defendants other than Carbon and Catalyst committed certain wrongful acts which include the execution of a contract alleged to be grossly unfair and unjust and the appropriation and wrongful use by Mine Safety of certain designated chemical compounds and devices alleged to be the property of Carbon and/or Catalyst as follows:

1. Paragraph 22(e) — Appropriated to its own use the gains and profits resulting from the use of 1-1-1 Catalyst perfected in 1939 by defendant, Carbon Monoxide Eliminator Corporation.

2. Paragraph 22(g) — Converted to its own use large profits derived from the wrongful use of a device known as a Helium Leak Detector which was perfected and owned by defendant, Catalyst Research Corporation.

3. Paragraph 22(i) — "In or about June, 1939, induced Dr. Carey B. Jackson to assign to defendant, Mine Safety Appliances Company, a device invented by Jackson during the time he was employed by the defendant, Carbon Monoxide Eliminator Corporation, which device is used in breathing apparatus used at sea and high altitudes."

The complaint seeks relief which includes, inter alia, that the Court adjudge and decree that large losses were sustained by the defendants, Carbon and Catalyst, due to the misconduct of their affairs by Mine Safety and for which Mine Safety is accountable; that Mine Safety realized and should pay over to Carbon or to Catalyst large profits accruing to it through the wrongful appropriation and use of certain apparatus and devices referred to in the pleading, and that an accounting be ordered to determine the losses sustained by Carbon and by Catalyst and a decree be entered in their favor for the amount thereof.

Depositions heretofore taken by the plaintiff develop the fact that Dr. C. B. Jackson was employed by Carbon and/or Catalyst prior to his employment by Mine Safety Appliances Company and developed the following facts with respect to the devices alleged in the pleading to have been appropriated and wrongfully used by Mine Safety:

1. 1-1-1 Catalyst is a patented chemical compound owned by Carbon or by Catalyst. It is an oxidation catalyst designed for use in the elimination of noxious and other gases from the exhaust of internal combustion engines.

2. The Helium Leak Detector is a device for the detection of leaks in balloons or other containers containing helium gases. It was invented by Dr. O. G. Bennett and certain features of the design thereof are covered by patents owned by Catalyst.

3. The breathing device or devices referred to in the complaint include two types:

(a) A device known as the high altitude or HA breathing apparatus, which is a self-contained, continuous breathing apparatus (O. G. B. p. 30) in which a sodium peroxide compound and lithia are used as the oxidizing agent. The device is covered by a U. S. patent owned by Mine Safety.

(b) A breathing apparatus or device known as Type A and Type A-1 in which the chemical used is potassium tetroxide. The device Type A is covered by a U. S. patent owned by Mine Safety. Type A-1 is not patented.

Plaintiff's motion is supported by the affidavit of Joseph H. Hirshhorn. This affidavit does not enlarge the "subject matters" involved in the pending action but purports to establish that production of the documents and material enumerated in the motion is required by the plaintiff for the proper prosecution of his case and is "relevant to the issues in this case." The principal averments of this affidavit are that the action is based upon an abuse of Mine Safety of its alleged domination over the other two corporate defendants, particularly in the appropriation to itself of valuable inventions and large profits resulting therefrom; that Dr. Carey B. Jackson, presently employed by Mine Safety, worked on the breathing apparatus referred to in the documents in question; that Dr. O. G. Bennett and one George Wieczorek worked on the inventions involved in this suit, a portion of their work being done under the supervision of William P. Yant, Director of Research of Mine Safety; that said parties made notes of their discoveries and research work as it was done; that Dr. Jackson was unable to fix the dates or correlate times.

The affidavit states with reference to the research data and notes made by Messrs. Jackson, Bennett, Wieczorek and Yant that "therefore, their records and employment are also material."

Since this is a derivative stockholders' action which is based on alleged acts of fraud by directors and officers of the various defendant companies, the following questions come predominantly to the foreground:

1. Were the actions of the defendants, their officers and directors, in the interests of the minority stockholders of Carbon Monoxide and/or Catalyst?

2. Does a breach of duty and of trust exist?

3. Were the corporate affairs of Carbon Monoxide and/or Catalyst managed honestly and impartially in behalf of the corporations and all the stockholders?

The tenor of the federal decisions in respect to the general fiduciary duty of those in control of a corporation is unmistakable. The majority has the right to control, but when it does so, it occupies a fiduciary relation toward the minority, as much so as the corporation itself or its officers and directors. Zahn v. Transamerica Corp., 3 Cir., 162 F.2d 36; Southern Pacific Co. v. Bogert, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099.

A director is a fiduciary, as is a dominant and controlling stockholder or a group of stockholders. Their powers are in trust. Their dealings with the corporations are subjected to rigorous scrutiny. Where any of their contracts or engagements with the corporation are challenged, the burden is on the director or stockholder not only to prove the good faith of the transaction, but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281.

In view of the trust reposed in the stockholders, officers and directors of Carbon Monoxide and Catalyst, it will be necessary to know—

1. How and from what source can the activities of stockholders, officers or directors of Carbon Monoxide and Catalyst, as the same relate to the issues in this proceeding, be proved and determined?

2. Do the issues raised in the pleadings, the affidavits filed, and depositions which have been taken justify or require—

(a) Access to the personal and confidential records of the defendants?

(b) Removal from a privileged category any documents or records which are of a scientific, research or inventive nature, and which are in the possession of one or more of the defendants?

The issues to be ultimately decided by the Court involve four questions:

(a) Were inventions commenced and research made by scientists during the period when they were employed by Carbon Monoxide and/or Catalyst, which relate to the matters raised in this proceeding?

(b) What were the duties of said scientists during their employment by Carbon Monoxide and/or Catalyst?

(c) What was the agreement or circumstances under which said employment commenced and terminated, together with the period thereof?

(d) Did Mine Safety appropriate without just cause research data and/or inventions which were begun or commenced by scientists while in the employ of Carbon Monoxide and/or Catalyst?

It is necessary to keep these questions predominantly in mind in order to dispose of the many requests which are demanded in the motion for production of documents.

Numerous authorities exist which relate to the right of the employer to the invention or discovery of the employee, and the legal principles involved seem to have application under three different factual situations:

(a) An employee who is hired to do non-inventive work the "shop rights" rules are applied. National Development Co. v. Gray, 316 Mass. 240, 55 N.E.2d 783, 153 A.L.R. 973; Brown v. L. V. Marks & Sons Co., D.C., 64 F.Supp. 352.

(b) An employee who is engaged to use his inventive faculties to develop new products or make improvements in old ones. National Development Co. v. Gray, supra; Crown Cork & Seal Co. v. Fankhanel, D.C., 49 F.Supp. 611; Houghton v. United States, 4 Cir., 23 F.2d 386, 390; Hebbard v. American Zinc & Smelting Co., D.C., 66 F.Supp. 113, Id., 8 Cir., 161 F.2d 339; Standard Parts Co. v. Peck, 264 U.S. 52, 44 S.Ct. 239, 68 L.Ed 560, 32 A.L.R. 1033; Dalzell v. Dueber Watch Case Mfg. Co., 149 U.S. 315, 13 S.Ct. 886, 37 L.Ed. 749.

(c) An employee who is required by contract to assign his inventions to his employer. Guth v. Minnesota Mining & Mfg. Co., 7 Cir., 72 F.2d 385; New Jersey Zinc Co. v. Singmaster, 2 Cir., 71 F.2d 277, writ of certiorari denied 293 U.S. 591, 55 S.Ct. 106, 79 L.Ed. 685; Brown v. L. V. Marks & Sons Co., D.C., 64 F.Supp. 352; Hebbard v. American Zinc, Lead & Smelting Co., supra; Hapgood v. Hewitt, 119 U.S. 226, 7 S.Ct. 193, 30 L.Ed. 369; Dalzell v. Dueber Watch Case Mfg. Co., supra; Fullman v. Steel City Electric Co., 3 Cir., 2 F.2d 4.

It has been held that a contract which requires an inventor to assign to his employer all inventions made while working for that employer, or at any time thereafter, violated public policy. Guth v. Minnesota Mining & Mfg. Co., 7 Cir., supra.

As to the public policy aspect, it will be necessary to reconcile this decision with the thought expressed by the Supreme Court in a case which related to a provision in a license agreement, requiring the licensee to assign to the licensor any improvement patents applicable to the machine and suitable for use in connection therewith. The Court held such a requirement was not per se illegal and unenforceable. Transparent-Wrap Machine Corp. v. Stokes & Smith Co., 329 U.S. 637, 67 S.Ct. 610.

The present status of the instant case makes impossible the application of any principle of law for the reason that until presentment is made of all the facts, the Court would not have a sound basis so to do.

The Federal Rules provide for only a sketchy statement of the substance of a claim or defense, which can amount to little more than notice. It is, therefore, incumbent that some machinery be substituted for such lack of detail in the pleadings and the discovery rules are the answer. It has been said that the most effective machinery for reducing and clarifying the issues is a preliminary examination of the evidence of both parties, as broad in scope as the trial itself.

The plaintiff contends it would be unable to prove the details of employment, or establish the activities of specially trained employes, in conection with research or inventions without access being had to the records of Mine Safety, Carbon Monoxide and Catalyst, together with the notes or memoranda made by said scientists.

The discovery rules, 26 to 37, inclusive, set up a complete method of accomplishing this purpose. Rule 26 provides for

taking the testimony of any party or witness by oral depositions or written interrogatories. Rule 33 provides for the issuance of written interrogatories to any adverse party. Rule 34 provides, upon a showing of good cause, for an order on any party to produce designated papers for inspection, copying or photographing. The scope of the examination allowed is set forth in Rule. 26(b) and permits a party to be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts.

Discovery is one of the working tools of the legal profession, and good cause would appear to be shown where it is established that the records in question would be relevant to the issues joined in the proceeding and amount to evidence of probative value.

The pre-trial deposition-discovery mechanism established by Rules 26 to 37 is one of the most significant innovations of the Federal Rules of Civil Procedure. Under the prior federal practice, the pretrial functions of notice-giving, issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.

Regardless of the previous state of the law, it now appears certain that the deposition and discovery rules are to be afforded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from engaging into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the state at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise. Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385.

Has the plaintiff under Rule 34 of the Federal Rules of Civil Procedure satisfactorily shown good cause to exist for the production of the documents referred to in the motion?

In passing upon the question, the Court has read with considerable care and thoroughness the depositions of Dr. Carey B. Jackson and Dr. O. G. Bennett. It appears in connection therewith that neither Dr. Jackson nor Dr. Bennett is able to state with any degree of accuracy or definiteness the detailed circumstances of their employment with either Mine Safety, Carbon Monoxide or Catalyst. This is true both as to the payment of financial remuneration, the records which were kept or made by them in relation to the work which was performed in connection with their various research activities, and the circumstances which relate to their transfer or change of their employment from Carbon Monoxide and/or Catalyst to Mine Safety.

The law heretofore was to the effect that it was not necessary under the provisions of Rule 34 to establish definitely that the documents sought to be examined constituted or contained material evidence. It was sufficient that the party seeking discovery establish that it is reasonably probable that the documents sought

to be examined constituted or contained material evidence. It has also been expressed that discovery should be permitted where it is shown that the documents may contain material evidence. No useful purpose would be gained in making reference to the various authorities which support the thought just expressed.

In addition thereto, the Supreme Court of the United States in the promulgation of the amendments to the Federal Rules of Civil Procedure modified Rule 26 which must be read in conjunction with Rule 34, by providing it is not ground for objection to the motion for production of documents that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 86 of the Federal Rules of Civil Procedure, which has relation to the effective dates of said amendments adopted by the Supreme Court on December 27, 1946, provides that said amended rules shall take effect on the day which is three months subsequent to the adjournment of the first regular session of the 80th Congress, but, if that day is prior to September 1, 1947, then these amendments shall take effect on September 1, 1947. The amendments to said rules were to govern all proceedings in actions then pending except to the extent that in the opinion of the Court their application in a particular action pending when the amendments take effect would not be advisable or would work injustice, in which event the former procedure applies. The first regular session of the 80th Congress adjourned on December 19, 1947, which would make said rules effective March 19, 1948.

Although the amendments to the Rules of Civil Procedure are not presently effective, at the least, it indicates the intention of the Supreme Court to have Rules 26 and 34 interpreted in a most liberal manner where a request is made for the production of documents or in the taking of depositions.

In connection with some of the records and data requested, Mine Safety contends said material constitutes research notes which cover secret and confidential processes and developments. To be made to disclose said data would be detrimental to the interests of Mine Safety, and under the provisions of Rule 30 (b) of the Federal Rules of Civil Procedure, the Court should not require the disclosure.

The Government of the United States has offered no objection to the disclosure of any matters which relate to the issues raised in the pleadings.

. The question, therefore, arises whether this is a type of case in which the Court should keep secretive said research data.

■ Where the data is unnecessary to the final adjudication of the issues, it should not be made available since serious prejudice might arise with respect to a very important feature of a company's business data. Claude Neon Lights, Inc., v. E. Machlett & Son., D.C., 31 F.2d 983; Lever Bros. v. Proctor & Gamble Mfg. Co. et al., D.C., 38 F.Supp. 680; Remington Rand, Inc., v. Control Instrument Co., Inc., D.C., 7 F.R.D. 18.

■ It appears in the instant case that plaintiff is not a competitor of Mine Safety, but regardless thereof, I cannot foresee how it would be possible to fairly and justly adjudicate the many involved issues without the research data or confidential notes of the scientists being made available. 8 Wigmore on Evidence, 3d Ed., pp. 157–160.

Any records or data made available, which relate to any matter of a research or confidential nature, can be made subject to the supervision of a court's officer, and positive precaution taken to protect Mine Safety or any other defendant in connection therewith.

I must next consider whether the plaintiff has complied with the requirements of Rule 34 as to the designation or description of the documents desired.

■ A request for documents generally in the possession of a person which relate to a particular matter is not sufficiently specific. Callen v. P. R. R. Co., U. S. Dist. Ct. E. D. Pa., 5 F.R.D. 83; Hercules Powder Co. v. Rohm & Haas Co., D. C. Del., 3 F.R.D. 302.

I believe the documents requested have been described with sufficient particularity to meet the requirements of Rule 34. The request made relates only to matters which have been specifically referred to in the complaint, and the outgrowths of those inventions.

It is furthermore contended by Mine Safety that the demands made are highly burdensome and oppressive, and to comply therewith would not only require the expenditure of a large amount of money but would seriously hamper the company's current operations.

Every law suit is burdensome and expensive to the party litigants, but where it is found necessary to bring about a fair, impartial and thorough administration of justice, all sources of information must be made available regardless of expense or inconvenience resulting therefrom.

Mine Safety also likens this proceeding to one of patent infringement where two issues exist:

(a) Was there an infringement?

(b) What are the damages if infringement exists?

It is argued that if the Court believes the plaintiff is entitled to the production of the documents requested, the allowance should be on the following basis:

(a) Reasonable disclosure of matters which will enable the plaintiff to prove there was a fraud perpetrated or wrong committed, or to establish liability.

(b) No right to inspect any documents which relate to profits, sales, or degree to which any of the items were placed on the market, or sold to the government, until it is first established that liability exists.

In patent actions the validity of a decision of a district court on the issue of infringement may be tested on appeal under Sections 128 and 129 of the Judicial Code, as amended, 28 U.S.C.A. §§ 225(a) and 227. This can be done without first securing an accounting, a money judgment, or their respective equivalents.

However, this procedure is peculiarly applicable to patent litigation. To achieve such a result in the instant case, as in a breach of contract, it appears necessary to first obtain appropriate legislation. Canister Co. v. National Can Corp., 3 Cir., 163 F.2d 683.

In the litigation at bar, the question first exists as to whether one or all defendants have breached a duty owed to the plaintiff in the management of their corporate affairs.

If this queston is answered in the affirmative, consideration must be given to the amount of money judgment, if any, to which the plaintiff is entitled.

Regardless of what conclusion the Court might reach as to the question of liability, this would not be a final decision. A final decision generally is one which ends the litigation on the merits and leaves nothing for the Court to do but execute the judgment. Appellate review may be had only upon an order or judgment disposing of the whole case, and adjudicating all rights, including both liability and compensation. The foundation of this policy is not in merely technical conceptions of "finality". It is one against piecemeal litigation. The case is not to be sent up in fragments. Reasons other than conservation of judicial energy sustain the limitation. One is elimination of delays caused by interlocutory appeals. Catlin v. United States, 324 U.S. 229, 233, 234, 65 S.Ct. 631, 89 L.Ed. 911; Gospel Army v. Los Angeles, 331 U.S. 543, 546, 67 S.Ct. 1428.

I am confronted with the rule that issues should not be tried piecemeal unless necessary to permit undue delay or to promote justice.

Where final judgment is entered by the district court, and on appeal a higher tribunal reaches a contrary conclusion, judgment can then be finally given, thus avoiding the waste and expense of another trial. Fratta v. Grace Line, Inc., 2 Cir., 139 F.2d 743.

I must assume that the plaintiff will not request a date for trial until his case is properly prepared, and the defendants always have a right to be heard, if the date requested by the plaintiff is not convenient or sufficiently far advanced for the defendants to be prepared for trial.

 I believe it would be improper to not consider the motion for production of documents in its entirety, both as to liability and damages.

However, I see no necessity to presently delve into the records of any of the defendants which would relate to the financial loss suffered by the plaintiff.

Since the matter of accounting will be somewhat involved, the Court under the provisions of Rule 53(b) of the Federal Rules of Civil Procedure can make an appropriate order of reference to a Master, after all testimony on liability has been presented.

The depositions indicate that the scientists, employed by Carbon Monoxide, Catalyst and Mine Safety, compiled and maintained records in the form of a research diary that related to the details of the work in which they engaged. They were indefinite as to the records which were kept, when they were commenced, when they terminated, by whom they were employed, who paid their salaries, and when they were transferred from one employer to the other. It is impossible to definitely know whether their research activities were performed at a time or under circumstances which would entitle the plaintiff to the fruits of their labor.

 It is the belief of the Court that the proof which is required to adjudicate this action can only be secured through the records of the defendants. Without discovery, including complete access to the defendants' records kept in the regular course of business, it would be impossible for the plaintiff to proceed for the reason that the action would be doomed to fail for the failure of proof.

It is intended to afford protection to any defendants who make written certification to the Court that certain documents contain matters of a secretive research of confidential nature. If this situation arises, the Court will make a supplemental order in which it will be directed that said documents be placed in the possession and custody of Stephen P. Laffey, Esquire. Counsel for the respective party litigants will have the right and privilege to examine said documents by giving three days' written notice to the adverse party litigant of said intention. No copies to be made or excerpts to be taken therefrom without authorization by the Court, and no person to have access thereto, other than counsel of record, without written order of the Court.

Since I believe the production of the requested documents is necessary to enable the plaintiff to proceed with his action and to facilitate proof and progress at the trial, appropriate orders are hereby entered.

Order for Inspection of Documents

And now, to wit, this 27th day of February, 1948, the plaintiff's motion for production of documents having duly come on for argument, after hearing counsel for all the parties and upon due consideration, it is ordered that Carbon Monoxide Eliminator Corporation, Catalyst Research Corporation and W. Denning Stewart, defendants in the above-entitled action, produce at such place or places as may be mutually agreed upon between the parties, or in default of such agreement at Room No. 826 in the Federal Building in the City of Pittsburgh, Pennsylvania, twenty days after the date of this order and thereafter on each succeeding business day until the discovery hereby permitted has been completed, or at such other time or times as may be mutually agreed upon between the parties, the documents, papers, books, accounts, letters, contracts, patents, applications, assignments, and other records hereinafter listed, all of which the plaintiff, his attorneys, accountants and other appropriate representatives are hereby granted leave to inspect, copy, photograph, and use in the taking of depositions in this action:

1. All notebooks in the possession, custody or control of the above named three defendants, wherein Dr. O. G. Bennett since 1935, or Dr. Carey B. Jackson since 1936 to date, recorded notes of his work, discoveries, inventions and developments.

2. All pay roll records of Carbon Monoxide Eliminator Corporation and Catalyst Research Corporation showing the date of commencement and termination of employment by either of them of Dr. Carey B. Jackson, William P. Yant and George Wie-

czorek, and the compensation paid to each of them, if employed.

3. All vouchers and all cancelled checks of Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation to Dr. Carey B. Jackson or George Wieczorek in payment of compensation.

4. All contracts of employment and for the assignment of inventions or patents or the like between Dr. Carey B. Jackson, Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, or any of them.

5. All contracts of employment between William P. Yant and either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation.

6. All contracts between Mine Safety Appliances Company and either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, and all records pertaining to any lease between Mine Safety Appliances Company and either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, or any payments of rental by either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation to Mine Safety Appliance Company.

7. All accounts, books, cancelled checks, correspondence, notes and all other records or writings evidencing or relating to all payments or credits by Mine Safety Appliances Company to Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, or by either of the latter to Mine Safety Appliances Company, and to any indebtedness, obligation or claim of Mine Safety Appliances Company to or against either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation or vice versa.

8. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson or George Wieczorek, in the possession, custody or control of Carbon Monoxide Eliminator Corporation, Catalyst Research Corporation or W. Denning Stewart, in any way relating or referring to his or their experiments and research in making potassium tetroxide, mixed peroxides of sodium and potassium, pure potassium, super oxide, catalyst potassium super oxide or other chemical in such form that it would react with exhaled air from a man to generate oxygen to allow a person to breathe in a closed system without contact with the surrounding atmosphere.

9. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson or George Wieczorek, in the possession, custody or control of Carbon Monoxide Eliminator Corporation, Catalyst Research Corporation or W. Denning Stewart, in any way relating or referring to his or their experiments and research in making or devising the mechanical means or apparatus for the use of any of the chemicals referred to in Paragraph 8 above.

10. All patents, patent applications, assignments of patents, patent licensing agreements, or similar documents involving or relating to any of the chemicals or apparatus referred to in Paragraphs 8 and 9 above, or copies thereof if copies but not the originals of any of the documents designated in this paragraph are in the possession, custody or control of any of the three defendants named in the opening paragraph of this order.

11. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson in the possession, custody or control of Carbon Monoxide Eliminator Corporation, Catalyst Research Corporation or W. Denning Stewart, in any way relating or referring to the experiments and research of said Dr. Jackson in adding lithia hydrogen to sodium peroxide, or in making or mixing any other chemicals for use in high altitude breathing apparatus.

12. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson, in the possession, custody or control of Carbon Monoxide Eliminator Corporation, Catalyst Research Corporation or W. Denning Stewart, in any way relating or referring to the experiments and research of said Dr. Jackson in making or devising the mechanical means or apparatus for the use of any of the chemicals referred to in Paragraph 11 above.

13. All patents, patent applications, assignments of patents, patent licensing agreements or similar documents involving or relating to any of the chemicals or apparatus referred to in Paragraphs 11 and 12 above, or copies thereof if copies but not the originals of any of the documents designated in this paragraph are in the possession, custody or control of Carbon Monoxide Eliminator.

14. All stock record books of Carbon Monoxide Eliminator Corporation.

The request set forth for the production of documents hereinafter referred to is granted. However, the effectiveness of the order in connection therewith is to be suspended until such time as an order of reference is made to a Master to determine the profits realized by the defendants, or damages sustained by the plaintiff as a result of the actions of the defendants.

15. All books of account, contracts, correspondence, orders, or other writings, in the possession, custody or control of Carbon Monoxide Eliminator Corporation, Catalyst Research Corporation or W. Denning Stewart, relating to commercial or peace time use or application of the chemicals and apparatus referred to in Paragraphs 8 and 9 above, or developments, outgrowths or improvements of any of those or similar chemicals or apparatus.

Carbon Monoxide Eliminator Corporation, Catalyst Research Corporation and W. Denning Stewart, shall have the right to be present, personally or by representatives, at all times while any of said documents are being inspected or copied by the plaintiff or any representative of the plaintiff, and to accompany any document while it is out for photographing, the right to take any of said documents to a reputable photographing or reproducing establishment hereby being accorded the plaintiff, provided that any document taken out for this purpose shall be returned with reasonable dispatch to the place from whence it was taken.

Any depositions which may be taken in this action in which any of the contents of any of the aforesaid documents are revealed shall be impounded by the Clerk of this Court so that no such deposition shall be accessible to anyone except the Court, the parties to this action, their attorneys and representatives, and representatives of the United States Government.

Order for Inspection of Documents

And now, to wit, this 27th day of February, 1948, the plaintiff's motion for production of documents having duly come on for argument, after hearing counsel for all the parties and upon due consideration, it is ordered that Mine Safety Appliances Company, George H. Deike, William P. Yant and John F. Beggy, defendants in the above-entitled action, produce at such place or places as may be mutually agreed upon between the parties, or in default of such agreement at Room No. 826 in the Federal Building in the City of Pittsburgh, Pennsylvania, twenty days after the date of this order and thereafter on each succeeding business day until the discovery hereby permitted has been completed, or at such other time or times as may be mutually agreed upon between the parties, the documents, papers, books, accounts, letters, contracts, patents, applications, assignments, and other records hereinafter listed, all of which the plaintiff, his attorneys, accountants and other appropriate representatives are hereby granted leave to inspect, copy, photograph, and use in the taking of depositions in this action:

1. All notebooks in the possession, custody or control of the above-named four defendants, wherein Dr. O. G. Bennett since 1935, or Dr. Carey B. Jackson since 1936 to date, recorded notes of his work, discoveries, inventions and developments, relating in any way to a catalyst designed to eliminate carbon monoxide from the exhaust gases of internal combustion engines, to 1-1-1 catalyst, to an ampoule sealing machine, or to breathing apparatuses, whether for use at sea, at high altitudes, or in any other place where a person is required to enter a toxic atmosphere, and all peace time applications of such breathing apparatuses and all outgrowths from any such chemical or device.

2. All pay roll records of Mine Safety Appliances Company showing the date of commencement and termination of employment by it of Dr. Carey B. Jackson, William

P. Yant and George Wieczorek, and the compensation paid to said Jackson and Wieczorek.

3. All vouchers and all cancelled checks of Mine Safety Appliances Company to Dr. Carey B. Jackson or George Wieczorek in payment of compensation.

4. All contracts of employment and for the assignment of inventions or patents or the like between Dr. Carey B. Jackson and Mine Safety Appliances Company, Carbon Monoxide Eliminator Corporation, and Catalyst Research Corporation, or any of them.

5. All contracts of employment between William P. Yant and Mine Safety Appliances Company, Carbon Monoxide Eliminator Corporation and Catalyst Research Corporation, or any of them, provided that all provisions in contracts between William P. Yant and Mine Safety Appliances Company fixing the amount of compensation to be paid by the latter to the former may be covered by the defendants with an opaque material that will conceal those provisions from the plaintiff.

6. All contracts between Mine Safety Appliances Company and either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, and all records pertaining to any lease between Mine Safety Appliances Company and either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, or any payments of rental by either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation to Mine Safety Appliances Company.

7. All accounts, books, cancelled checks, correspondence, notes, and all other records or writings evidencing or relating to all payments or credits by Mine Safety Appliances Company to Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation, or by either of the latter to Mine Safety Appliances Company, and to any indebtedness, obligation or claim of Mine Safety Appliances Company to or against either Carbon Monoxide Eliminator Corporation or Catalyst Research Corporation or vice versa.

8. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson or George Wieczorek, in the possession, custody or control of Mine Safety Appliances Company, George H. Deike, William P. Yant or John F. Beggy, in any way relating or referring to his or their experiments and research in making potassium tetroxide, mixed peroxides of sodium and potassium, pure potassium, super oxide, catalyst potassium super oxide or other chemical in such form that it would react with exhaled air from a man to generate oxygen to allow a person to breathe in a closed system without contact with the surrounding atmosphere.

9. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson or George Wieczorek, in the possession, custody or control of Mine Safety Appliances Company, George H. Deike, William P. Yant or John F. Beggy, in any way relating or referring to his or their experiments and research in making or devising the mechanical means or apparatus for the use of any of the chemicals referred to in Paragraph 8 above.

10. All patents, patent applications, assignments of patents, patent licensing agreements, or similar documents involving or relating to any of the chemicals or apparatus referred to in Paragraphs 8 and 9 above, or copies thereof if copies but not the originals of any of the documents designated in this paragraph are in the possession, custody or control of any of the four defendants named in the opening paragraph of this order.

11. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson in the possession, custody or control of Mine Safety Appliances Company, George H. Deike, William P. Yant or John F. Beggy, in any way relating or referring to the experiments and research of said Dr. Jackson in adding lithia hydrogen to sodium peroxide, or in making or mixing any other chemicals for use in high altitude breathing apparatus.

12. All reports, notes, memoranda, records and other written matter of any nature made by Dr. Carey B. Jackson, in the possession, custody or control of Mine Safety Appliances Company, George H. Deike, William P. Yant or John F. Beggy,

in any way relating or referring to the experiments and research of said Dr. Jackson in making or devising the mechanical means or apparatus for the use of any of the chemicals referred to in Paragraph 11 above.

13. All patents, patent applications, assignments of patents, patent licensing agreements or similar documents involving or relating to any of the chemicals or apparatus referred to in Paragraphs 11 and 12 above, or copies thereof if copies but not the originals of any of the documents designated in this paragraph are in the possession, custody, or control of Mine Safety Appliances Company, George H. Deike, William P. Yant or John F. Beggy.

14. All stock record books of Carbon Monoxide Eliminator Corporation.

The requests set forth for the production of documents hereinafter referred to are granted. However, the effectiveness of the order in connection therewith is to be suspended until such time as an order of reference is made to a Master to determine the profits realized by the defendants, or damages sustained by the plaintiff as a result of the actions of the defendants.

15. All contracts of Mine Safety Appliances Company for manufacture and sale of Navy Type A-1 Oxygen Rescue Breathing Apparatus or similar device.

16. All contracts, orders and correspondence in the possession, custody or control of Mine Safety Appliances Company, George H. Deike, William P. Yant or John F. Beggy, relating to commercial or peace time use or application of the chemicals and apparatus referred to in Paragraphs 8 and 9 above, or developments, outgrowths or improvements of any of those or similar chemicals or apparatus.

17. All contracts of Mine Safety Appliances Company for manufacture and sale of the high altitude breathing apparatus and any of the chemicals or mechanical means or apparatus referred to in Paragraphs 11 and 12 above, or similar devices.

Mine Safety Appliances Company, George H. Deike, William P. Yant and John F. Beggy, shall have the right to be present, personally or by representatives, at all times while any of said documents are being in-spected or copied by the plaintiff or any representative of the plaintiff, and to accompany any document while it is out for photographing, the right to take any of said documents to a reputable photographing or reproducing establishment hereby being accorded the plaintiff, provided that any document taken out for this purpose shall be returned with reasonable dispatch to the place from whence it was taken.

Any depositions which may be taken in this action in which any of the contents of any of the aforesaid documents are revealed shall be impounded by the Clerk of this Court so that no such deposition shall be accessible to anyone except the Court, the parties to this action, their attorneys and representatives, and representatives of the United States Government.