# HARSCO CORP.

### v.

### Lucjan ZLOTNICKI, Appellant.

### No. 85–5149.

United States Court of Appeals,
Third Circuit.

Argued Nov. 6, 1985.

Decided Dec. 17, 1985.

Rehearing and Rehearing In Banc
Denied Jan. 23, 1986.

Lawrence Corson (Argued), Robert B.B. Schatz, Bruce M. Dolfman, Corson & Getson, Philadelphia, Pa., for appellant.

Thomas B. Kenworthy (Argued), Morgan, Lewis & Bockius, Philadelphia, Pa., for appellee.

Before SEITZ, WEIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Harsco Corporation initiated an action in the United States District Court for the Middle District of Pennsylvania against Lucjan Zlotnicki, a former employee, seeking, *inter alia*, a declaratory judgment as to the ownership of an invention conceived and developed by Zlotnicki during his employment with Harsco. The district court granted summary judgment in favor of Harsco and denied Zlotnicki's motion for reconsideration. Zlotnicki appeals and we affirm.[1]

I.

The following undisputed facts are set out in Harsco's statement of material facts in the district court and Zlotnicki's statement in opposition thereto. In November 1981, Bowen-McLaughlin-York (BMY), a division of Harsco (also referred to collectively as "the Company"), hired Zlotnicki, then an adjunct professor at Spring Garden College, as a "staff engineer." At that time, the parties did not discuss the execution of an employment agreement, even though Harsco generally required each new employee to sign such an agreement. The standard agreement assigns Harsco patent rights to any inventions an employee conceives during and within the scope of employment. After commencing work for Harsco, Zlotnicki refused to sign the standard agreement because he objected to several provisions, including the assignment of rights to inventions without any added compensation therefor to the employee. He eventually signed the agreement on February 18, 1983, under circumstances that form the background of these proceedings.

In late July 1982 BMY decided to respond to a United States Army request for a proposal (RFP) to build an assault bridge. The RFP contained specifications for a longer assault bridge than had previously existed, and required a device capable of launching such a bridge. Harsco assigned Zlotnicki to a team structured to conceptualize the development of the needed "launcher." Defendant's assigned role in the early development process is a matter of dispute, but he did perform mathematical calculations that demonstrated that existing launchers were technically incapable of meeting the RFP requirements. Zlotnicki stated in his affidavit in opposition to Harsco's motion for summary judgment that he was fascinated by the problem and at home

> my curiosity led me to play with some designs on my own, and as a result, I

---

1. The district court exercised jurisdiction based on 28 U.S.C. § 1332 (1982) (diversity of citizenship). This court has jurisdiction pursuant to 28 U.S.C. § 1291 (final judgment of the district court).

invented what I called the four-bar bridge launcher. I did this at home, with my tools, and used nothing that belonged to the Plaintiff. I made a design sketch, and I prepared a technical description with the intention of seeking a patent. He then stated that upon returning to the plant following his weekend activity on his bridge-launcher he informed BMY that he had an idea and a sketch that he thought would produce a launcher capable of meeting the specifications of the RFP. After initially rejecting it, BMY accepted the design and the Army selected BMY to build a launch mechanism using Zlotnicki's design.

On February 8, 1983, Zlotnicki learned that Harsco planned to publicly circulate illustrations of his invention. He sent a memorandum to the BMY chief engineer, stating that the illustrations could not be released without his permission and that such circulation would invalidate his patent application.

Defendant met on February 11, 1983, with the BMY director of engineering and other BMY superiors. They told Zlotnicki that if he did not sign the standard employment agreement they would terminate his employment. Although he had an opportunity to consult with his attorney, Zlotnicki reluctantly signed the standard agreement on February 18, 1983. He attached a copy of his proposed alternate agreement to the executed Company standard agreement, but Harsco never signed the alternate agreement. Harsco bases its right to the launcher design primarily on the employment agreement.

In March, Zlotnicki filed a patent application for the launch mechanism. On March 23, 1983, Zlotnicki's attorney drafted a letter that he addressed to the United States Army and in which he advised it that the patent to the bridge-launcher mechanism was in dispute. The letter was never mailed, but Zlotnicki's attorney read it over the telephone to the president of BMY. On March 24, 1983, BMY invited the attorney to its headquarters. Upon his arrival, he learned that the Company had terminated Zlotnicki that afternoon and that a judge of

the United States District Court for the Middle District of Pennsylvania was on the telephone to inform him of a temporary restraining order against Zlotnicki.

On March 31, 1983, Harsco filed its complaint seeking a declaratory judgment as to ownership of the invention and injunctive relief against disclosures of confidential information by Zlotnicki. Harsco claimed the invention under both the signed employment agreement and the common law right of an employer to its employees' inventions. On May 4, 1983, the court issued a preliminary injunction in favor of Harsco. The court based its order on a provisional finding that Harsco owned the launch mechanism because of the common law right of an employer to inventions created in the course of employment by an employee assigned to solve a specific mechanical problem. The court did not rely on the employment contract.

On May 26, 1983, Harsco moved for summary judgment based on its common law right to the invention. The court denied plaintiff's motion because it found that there was an unresolved issue of material fact regarding the precise problem Harsco had assigned Zlotnicki to resolve.

Several months later, Harsco filed a second motion for summary judgment, this one based upon the standard employment agreement. By memorandum and order of October 24, 1984, the district court held that the legal issues raised by Harsco's last motion were appropriate for summary judgment. The court set a briefing schedule and Zlotnicki filed a brief in opposition to the motion, but submitted no additional affidavit or other evidence. On November 8, 1984, Zlotnicki filed a motion for partial summary judgment based on the unenforceability of the employment agreement. The court granted Harsco's motion for summary judgment and denied Zlotnicki's motion. Judgment was entered on November 27, 1984.

On December 6, 1984, Zlotnicki filed a motion for reconsideration which he later supported with a lengthy affidavit. He did not, as required by local Rule 603 of the

district court, state why the evidence contained in the affidavit could not have been presented prior to summary judgment. By memorandum and order entered February 13, 1985, the court denied the motion for reconsideration. Zlotnicki appealed.

## II.

Zlotnicki argues that the district court erred in denying his motion for reconsideration of the summary judgment order. Our review of the district court's denial of the motion is limited to determining whether the trial court abused its discretion. *Slater v. KFC Corporation*, 621 F.2d 932, 933 (8th Cir.1980). The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence. *Keene Corp. v. International Fidelity Insurance Co.*, 561 F.Supp. 656, 665 (N.D.Ill.1983). Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration. *DeLong Corp. v. Raymond International Inc.*, 622 F.2d 1135, 1139–40 (3d Cir.1980). When Zlotnicki moved that the district court reconsider its summary judgment order, he argued that the court had erred, but he submitted no new evidence. He filed only his own affidavit containing evidence that was available prior to the summary judgment. The district court appropriately did not consider the affidavit in its disposition of the motion for reconsideration and merely reviewed its summary judgment for error. Therefore, we now address the district court's action in granting the underlying summary judgment.

Our standard of review is whether the district court erred as a matter of Pennsylvania law in interpreting and applying the employment agreement and entering summary judgment for the plaintiff. *In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 257 (3d Cir.1983), *cert. granted in part sub nom. Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, — U.S. —, 105 S.Ct. 1863, 85 L.Ed.2d 157 (1985). There is no dispute between the parties that Pennsylvania

law governs and we independently review the district court's reading of Pennsylvania law. *See William B. Tanner, Inc. v. WIOO, Inc.*, 528 F.2d 262, 266 (3d Cir. 1975). Zlotnicki argues that summary judgment was inappropriate because the agreement was unenforceable both for lack of consideration and because he signed it under duress. He also argues that the district court erred in applying the employment agreement to an invention conceived over six months prior to the execution of the agreement. We turn to this contention first.

## A.

In his brief in opposition to plaintiff's motion for summary judgment, Zlotnicki stated that when he executed the agreement, he did not intend its scope to reach the launcher. The district court refused to consider Zlotnicki's subjective reading of the agreement and held that the agreement applied retroactively because its first paragraph contains the language "during employment."

On appeal Zlotnicki relies on *Rotary Lift Co. v. Clayton*, 127 F.Supp. 176 (D.Mass. 1954), to support his prospective reading of the agreement. His reliance is misplaced. First, *Rotary Lift* does not apply Pennsylvania law. Second, the language in *Rotary Lift* differed from that in the Harsco agreement and, through use of the future tense, dictated only prospective relief. The Harsco agreement, on the other hand, used present and past tenses and referred to Zlotnicki's entire term of employment. The district court's interpretation of the contract as retrospective is not erroneous.

Second, Zlotnicki asserts that the agreement is unenforceable because the only consideration provided by Harsco was the continuation of Zlotnicki's employment. He argues that, under Pennsylvania law, such consideration is insufficient to support a patent assignment contract, and supports his argument with a Pennsylvania trial court decision in *A.B.L. Liquidating Co. v. McCabe*, 62 Pa.D. & C.2d 29 (Bucks C.P. 1973). That decision is inapposite, how-

ever, because the employment agreement in that case specifically excluded "all inventions which I made prior to the date of this Agreement." *Id.* at 33.

When, as in this case, we can turn to no holding of the state's highest appellate court, we may look to other sources for guidance.

> In the absence of an authoritative pronouncement from the state's highest court, the task of a federal tribunal is to predict how the court would rule. To make this prognostication, we are not inflexibly confined by dicta or by lower state court decisions, although we should look to such statements as indicia of how the state's highest court might decide. [Citation omitted.] The policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies and the decisions of other courts may also inform our analysis.

*Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir.1981). *See, e.g., McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 662 (3d Cir.), *cert. denied*, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

Recognizing the lack of Pennsylvania law in support of his position that consideration was inadequate, Zlotnicki urged the district court to analogize to Pennsylvania law on restrictive covenants in employment contracts. Pennsylvania has long established that a covenant that prohibits an employee from competing with an employer after the termination of their business relationship is enforceable only if it is ancillary to the beginning of employment or is supported by new consideration. *Maintenance Specialties, Inc. v. Gottus*, 455 Pa. 327, 314 A.2d 279, 281 (1967). Zlotnicki argued that this principle should apply to patent assignments as well. The district court rejected Zlotnicki's analogy. It concluded that restrictive covenant cases differ from assignments of patent rights because restrictive covenants hamper a person's ability to earn a living, whereas patent assignments affect only property rights to patents. The district court did not err in

refusing to apply the rationale of the restrictive covenant cases and in rejecting the plaintiff's assertion that Pennsylvania courts "equate patent and invention assignment agreements ... to restrictive covenants in employment agreements."

Pennsylvania courts define consideration as

> a benefit to the party promising or a loss or detriment to the party to whom the promise is made [citations omitted] as long as the promisee in return for the promise does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not.

*TMA Fund, Inc. v. Biever*, 380 F.Supp. 1248, 1253 (E.D.Pa.1974), *aff'd mem.* 532 F.2d 747 (3d Cir.1976).

When the parties both signed the standard employment agreement without stating any definite period of time, and Zlotnicki agreed that any inventions resulting from his work with Harsco would remain its sole and exclusive property, Harsco bound itself under Pennsylvania law to employ Zlotnicki for a reasonable period of time. Williston succinctly states the rule, as applied by the Pennsylvania Supreme Court, in these words:

> It is the settled law of agency that if the agent or employee furnishes a consideration in addition to his mere services, he is deemed to have purchased the employment for at least a reasonable period of time where the duration of employment is not otherwise defined.

S. Williston, W. Jaeger, *A Treatise on the Law of Contracts* § 1017A at 151 (3d ed. 1967). We had occasion in *Bravman v. Bassett Furniture Industries, Inc.*, 552 F.2d 90 (3d Cir.1977), to consider the question under Pennsylvania law of the duration of an employment contract which contained no specific provision for the term of employment. Ordinarily, it is presumed to be terminable at will. *Slonaker v. P.G. Publishing Co.*, 338 Pa. 292, 13 A.2d 48, 51 (1940). When, however, there is "a showing that an employee has rendered such

additional consideration, e.g., sacrificing other employment opportunities, the duration of the employment contract is deemed to be for a reasonable period of time." *Bravman*, 552 F.2d at 93. We therefore hold that Harsco's agreement to employ Zlotnicki for a reasonable period of time provided adequate consideration for the agreement. *See Hebbard v. American Zinc, Lead & Smelting Co.*, 161 F.2d 339, 344–45 (8th Cir.1947) (employee signed contract containing assignment of patent rights in exchange only for his continued employment).[2]

### B.

Zlotnicki next argues that the district court erred in refusing to recognize his economic duress defense to the employment agreement. In Pennsylvania,

[d]uress exists whenever one person, *by the unlawful act of another*, is induced to enter into contractual relations under such circumstances as to indicate that he has been deprived of the exercise of free will. . . .

\* \* \* \* \* \*

Business compulsion is a species of duress, not the common law duress, but duress clothed in *modern dress*, and *for* this reason the early common law doctrine of duress has been expanded to include business compulsion.

Business compulsion is not established merely by proof that consent was secured by the pressure of financial circumstances, but a threat of serious financial loss may be sufficient to constitute duress and to be ground for relief *where an ordinary suit at law or equity might not be an adequate remedy.*

*Litten v. Jonathan Logan, Inc.*, 220 Pa.Super. 274, 286 A.2d 913, 917–18 (1977) (footnotes omitted, emphasis in original). The court also stated that economic duress is

present only if the defendant "bring[s] about the state of financial distress in which plaintiffs [find] themselves at the time of signing." *Id.*, 286 A.2d at 917.

In the instant case, Zlotnicki failed to plead duress, although it is an affirmative defense. The district court decided the duress issue based only on Zlotnicki's contentions in his opposition to Harsco's motion for summary judgment. Zlotnicki alleged that "[o]n February 11, 1983, defendant was humiliated, harassed, cursed at and threatened by plaintiff's employees, to force defendant to sign the Employment Agreement against his will. Defendant was told he would, in addition to suffering other harms, be fired if he did not sign." Zlotnicki offered no evidentiary support for this contention. The court concluded that Zlotnicki was not the victim of economic duress because the situation that caused him to fear the loss of his job—the need to support his wife and child—was of his own making. Harsco did not manipulate his financial circumstances to render him more susceptible to economic pressure. *See Reed v. Smithkline Beckman Corp.*, 569 F.Supp. 672 (E.D.Pa.1983) (general financial pressure of the marketplace and plaintiff's need to support herself and her son do not constitute duress).

The district court also noted that Zlotnicki had an opportunity to consult his attorney before signing the agreement. The court, invoking the principle that the opportunity to consult counsel vitiates a duress defense, concluded that this further weakened Zlotnicki's position. Zlotnicki now asserts that the courts have never applied this principle to economic duress. In fact, courts have regularly invoked the principle in cases involving alleged economic duress. *See Three Rivers Motor Co. v. Ford Motor Co.*, 522 F.2d 885, 893–94 (3d Cir.1975); *Reed v. Smithkline Beckman Corp.*, 569

---

**2.** The district court stated that if the promise of continued employment did not constitute consideration for the agreement, the agreement was enforceable under the Uniform Written Obligations Act, Pa.Stat.Ann. tit. 33, § 6 (Purdon 1967). Zlotnicki argues on appeal that the language in the agreement does not satisfy the requirements of the Uniform Written Obligations Act because it did not contain the express words or the equivalent that the parties "intended to be legally bound." Because of our disposition of the case, we do not reach this issue.

F.Supp. at 675; *Carrier v. William Penn Broadcasting Co.*, 426 Pa. 427, 233 A.2d 519, 521 (1967); *Smith v. Lenchner*, 204 Pa.Super. 500, 205 A.2d 626, 628 (1964). Further, *Litten v. Jonathan Logan* does not, as Zlotnicki asserts, reject this principle. Rather, it holds that, in the context of *Litten*, the presence of counsel did not help the plaintiffs. *Litten*, 286 A.2d at 917.

The district court committed no error in holding that the facts pleaded by Zlotnicki did not constitute economic duress under Pennsylvania law.

### III.

In summary, we conclude that Zlotnicki failed to raise a genuine issue of material fact that would preclude award of summary judgment in Harsco's favor.[3] The district court did not err in entering summary judgment for Harsco and in denying Zlotnicki's motion for reconsideration.

The judgment of the district court will be affirmed.

---

**3.** Zlotnicki also has a suit pending in the United States District Court for the Middle District of Pennsylvania, No. 84–0405, which he initiated against Harsco and BMY for wrongful dis- charge. The district court stayed this action. That case is not before us and we do not address it.