**UNITED STATES OF AMERICA, Plaintiff**
**v.**
**THE SCHOONER WINDSPIRIT, her**
**engines, apparel, tackle,**
**appurtenances, etc., IN REM; and**
**WIND SPIRIT LTD., IN PERSONAM, Defendants**

Civil No. 1990-343

District Court of the Virgin Islands

Div. of St. Thomas and St. John

April 18,1995

R. Scott Blaze, Trial Attorney, (U.S. Department of Justice), *for the plaintiff*

Ivan A. Guzman, Christiansted, V.I., *for the defendants*

MOORE, *Chief Judge*

## MEMORANDUM

This matter is before the Court on the plaintiff's motion to alter the Court's judgment entered on December 12, 1994, plaintiff's motion to file the aforementioned motion out of time, and the defendants' motion for reconsideration.[1] After thorough consideration of the parties' briefs, the Court will deny the plaintiff's motion to file its motion to alter judgment out of time. The Court will also deny the both the defendants' motion for reconsideration and their motion to supplement the motion for reconsideration.

## PLAINTIFF'S MOTION TO ALTER JUDGMENT

 The plaintiff moved for leave to file its motion to alter judgment out of time on the grounds that it did not receive the Court's judgment until two weeks after the date of its entry. Since the judgment was entered on December 12, 1994, the time to file motions under FED. R. CIV. P. 59(e) expired on December 27, 1994. The United States filed its motion to alter judgment and motion requesting leave to file out of time on December 29, 1994. The plaintiff concedes that the judgment was served upon its local counsel in a timely fashion. In fact, the judgment was placed in the Courthouse mailbox of the U.S. Attorney the day after it had been entered. That it took almost two weeks for the judgment to get from the local U.S. Attorney's office to the Justice Department hardly amounts to a valid justification for filing a post-judgment motion out of time. The defendants argue correctly that, when a party is represented by more than one attorney of record, service upon any one of them fulfills the requirements of FED. R. CIV. P. 5. The case cited by the defendants in support of this proposition, *Daniel International Corp. v. Fleishbach & Moore, Inc.*, 916 F.2d 1061 (5th Cir. 1990), is indeed instructive regarding the duties of litigants under the Federal Rules of Civil Procedure. Moreover, the Court's practice, and the litigants' duties and expectations regard-

---

[1] Pursuant to a stipulation of the parties, on September 23, 1994, the Court ordered the caption in this case to be amended, substituting Wind Spirit Limited for the *in person-am* defendant, Windstar Sail Cruises, Ltd., and dismissing Thomas A. Storm as an in personam defendant. Despite this Order, the parties continue to file motions in this case under the former caption.

ing the receipt of orders from the Court, are specifically controlled by our local rules of civil procedure. According to LRCi 5.3(c), "[i]t is the duty of counsel to check their boxes sufficiently often to ensure that they receive timely notice of . . . orders . . ." In this case, the judgment was timely placed in the box of plaintiff's local counsel. In this era of instant communication via telephone, facsimile, and electronic mail, there is no excuse for the untimely filing of post-trial motions.

▉ The District Court, moreover, "may not extend the time for taking any action under Rule[] . . . 59(e)." FED. R. CIV. P. 6(b). Thus, even if the Court were sympathetic to the plaintiff's plight, it could not enlarge the time for filing a Rule 59(e) motion because the ten-day limitation is jurisdictional. *See, Browder v. Director, Dep't. of Corrections of Illinois*, 434 U.S. 257, 263 n. 7 (1978); *Kraus v. Consolidated Rail Corp.*, 899 F.2d 1360, 1362 (3d Cir. 1990).

## DEFENDANT'S "MOTION FOR RECONSIDERATION"

▉ By contrast, the defendants submitted a "motion for reconsideration"[2] within the ten-day period, adorned with a request for an extension of time to supplement that motion at a later date. Because the defendants included sufficiently particular grounds for their motion to alter judgment, the Court will consider those issues specifically raised in the initial reconsideration motion. The Court cannot allow litigants to circumvent Rule 59's ten-day limit by timely filing a skeletal "motion" and later adding to it by filing a "supplement." Defendants raised only three issues in their three-page motion to alter judgment filed December 22, 1994. In the ten-page "supplement" filed on January 10, 1995, the defendants proffered at least seven additional grounds for altering the judgment. The Court will deny the defendant's motion to supplement its motion to alter judgment and will confine its analysis to the three issues raised in the December 22, 1994 motion.[3]

---

[2] The Federal Rules of Civil Procedure do not recognize a "motion for reconsideration" *in haec verba* but a motion so denominated will be treated as a motion to alter or amend. *See, Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167 (5th Cir. 1990).

[3] In the final paragraph of its "supplement," the defendants, for the first time, question the Court's jurisdiction over the in rem defendant. Were the Court to reach this pointless

## PRE-JUDGMENT INTEREST

The defendants protest the Court's award of prejudgment interest on the judgment to the plaintiff. Since the defendants merely rehash those arguments proffered in their post-trial brief, the Court will deny this aspect of the defendants' motion to alter judgment. *Resolution Trust Corp. v. Holmes*, 846 F. Supp. 1310 (S.D. Tex. 1994) ("neither Rule 59 nor a Rule 60 motion provides the proper vehicle for rehashing old arguments"). However, because defendants appear still to misapprehend the Court's rationale for awarding pre-judgment interest in this case, some further comment seems appropriate.

 The gravamen of defendants' argument is that the plaintiff has not suffered any "loss of use" of the property damaged by the defendants' boat. The Court disagrees. Though the plaintiff did not seek recovery based upon a "loss of use" theory, it is clear that it would have been entitled to do so.[4] It is beyond cavil that defendant's negligent actions caused much damage to the plaintiff's property by destroying a substantial portion of a natural resource located in a national park and thereby causing the plaintiff to lose significant uses commonly associated with such assets. Not only are divers, for example, unable to enjoy the lost portions of the reefs, but the park system has also lost its ability to fulfil its mandate to protect and preserve one of our nation's natural resources. Incurring out-of-pocket expenses is not a prerequisite to an award of prejudgment interest. *U.S. v. Peavey Barge Line*, 748 F.2d 395, 402 (7th Cir. 1984). Similarly, prejudgment interest cannot be limited to cases of easily quantifiable economic

---

red herring, it would remind defendants that: 1) service of summons was, in fact, directed to the in rem defendant; 2) any objection to the jurisdiction over the in rem defendant was waived by the defendants' first three filings with the Court, in which counsel purported to represent all "defendants" in the case; (*See*, 1/17/91 Def's Mot. for Extension of Time; ⅓/91 Joint Stip. for Extension of Time; 2/5/91 Mot. for Admission *Pro Haec Vice*); 3) objection was not raised in the parties' Joint Final Pre-Trial Order which contained a stipulation correcting the identification of the defendants in the case; and 4) the case proceeded to trial and final judgment over the course of three years without any exceptions lodged to the Court's *in rem* jurisdiction. Since the objection does not go the Court's subject matter jurisdiction, we would undoubtedly find that it had been waived.

[4] The Park System Resource Act defines "damages" as the combined compensation for restoration and the value for loss of use. *See*, 16 U.S.C. § 19jj(b) (1) (A).

loss. Rather, prejudgment interest is designed to compensate the victim for his loss. "[P]rejudgment interest in a sole fault collision case has always been allowed by maritime law unless exceptional circumstances render such an award inequitable." *Id.* at 401 (citing *Bankers Trust Co. v. Bethlehem Steel Corp.*, 658 F.2d 103, 108 (3d Cir. 1981), *cert. denied*, 456 U.S. 961 (1982)).

Defendants also argue that pre-judgment interest is not warranted because the plaintiff changed its theory of damages during the litigation. The Court determined that the plaintiff's actions did not amount to an "exceptional circumstance," as set forth in *Bankers Trust*, barring the award of pre-judgment interest. The Court sees no reason to alter either this finding or its equitable judgment that pre-judgment interest is appropriate in this admiralty case.

## PER DIEM CHARGES

■ The defendants claim that the Court erred in its assessment of the per diem charges required to staff adequate personnel for the task of re-attaching boulders to the coral reef. The parties presented conflicting evidence at trial on this subject, as well as on many of the subsidiary issues like the calculation of setup time and the increasing efficiency of operation. The Court weighed all the evidence in arriving at its determination and gave special attention to its conclusion that the repair operation will be much more difficult in the deepest part of the scar than in the shallow regions.[5] Hence, the Court arrived at its figures for dive times, set up, cleaning boulders and substrate in preparation for cementing, and transporting the cement to the sea floor based upon an average of the parties' divergent estimates. If anything, the Court's assessment of a 30 minute per boulder dive time errs in the defendants' favor.

---

[5] The deepest part of the scar is also the steepest and most difficult in which to work. The Court concluded that cementing boulders at those depths will require significantly longer dive and preparation times. By contrast, dive times at the shallower depths, around 30 feet in some areas, might be shorter.

## NUMBER OF BOULDERS TO BE RE-ATTACHED

■ The defendants also claim that the Court miscalculated its estimate of the number of boulders to be re-attached based upon Mr. Hudson's testimony that his own estimate of 233 had been off by "at least" thirty percent. The Court took Mr. Hudson's miscalculation into account and assessed it light of all the other available evidence to arrive at a figure of 322 boulders. The Court did not, as defendants assume, miscalculate thirty percent of 233. Rather, it credited Hudson's statement that his estimate could have been off by more than thirty percent and adjusted the findings upward accordingly in light of all the evidence.

## SUMMATION

■ A motion for reconsideration serves to "correct manifest errors of law or fact or to present newly discovered evidence." *Harsco v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), *cert. denied*, 476 U.S. 1171 (1986). Defendants have neither demonstrated any errors of law nor presented any newly discovered evidence. Accordingly, defendants' motion will be denied. Furthermore, the Court notes that its findings of fact, often based upon radically conflicting testimony, reflect the fairest assessment available in light of all the evidence. The Court's tables and formulas were not intended to imply that some scientific method can accurately measure the cost of repairing this lost part of our national treasure. The minor variations in the calculations urged by the defendants do not alter the reasonableness of the measure of damages the Court has deemed appropriate.

■ The Court also notes it could find no methodologically reliable scientific basis for extrapolating the damage along the full length of the scar based solely on the damages described in the first forty-eight meters. In its post-trial brief, the plaintiff urged the Court to apply a simple mathematical formula to extend the density of boulders along the entire length. The evidence, however, did not support this endeavor. Moreover, the defendants presented countervailing evidence that an expert could find no trace of any damage whatsoever beyond the first forty-eight meters. The defendants also effectively rebutted the testimony of the Park Service

employees who claimed to have retraced the entire length of the scar. Data compiled in the aftermath of the allision and before Hurricane Hugo placed the rest of the scar in a different location.

The plaintiff could have directed Mr. Hudson to review the Fagan video of the damage and, on that foundation, attempt to articulate some reasonable basis for extrapolating the damage along the balance of the scar. Counsel for the Untied States, however, chose not to do so. The Court's criticism of the plaintiff's inadequate case preparation, warranted in and of itself, provides background for the Court's reluctant conclusion that the United States presented insufficient evidence to support an award of damages beyond the first forty-eight meters. There is no sufficient basis in the evidence for simple mathematical extrapolation.

Both parties' motions to alter the judgment accordingly will be denied.

ENTERED this 18th day of April, 1995.

### ORDER

For the reasons set forth in the attached Memorandum, it is hereby

ORDERED that both parties' motions to alter judgment are DENIED.

ENTERED this 18th day of April, 1995.