Daniel R. MEACHUM

v.

### TEMPLE UNIVERSITY–OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION.

No. CIV. A. 97–1629.

United States District Court, E.D. Pennsylvania.

June 30, 1999.

Timothy A. Gallogly, Sirlin Gallogly & Lesser, P.C., Philadelphia, PA, for Daniel R. Meachum, Plaintiff.

John B. Langel, Arthur Makadon, David S. Fryman, Gayle A. Stein, Ballard, Spahr, Andrews and Ingersoll, Philadelphia, PA, for Temple University-of the Commonwealth System of Higher Education, Defendant.

### MEMORANDUM/ORDER

POLLAK, District Judge.

This memorandum presumes familiarity with the facts and analysis related in an opinion accompanying an order granting in part defendant's motion for summary judgment (docket # 26, March 29, 1999). Presently before this court is defendant's motion for reconsideration.[1] Temple asks this court to reconsider the following paragraph of the Order:

Meachum argues that several of Moore's omissions cast doubt on the assertion

1. Temple filed a motion for reconsideration on April 15, 1999 (docket # 27); Meachum

that outsourcing litigation would make the office more efficient. He notes that Moore—an experienced attorney and administrator—did not determine in advance what, if any, savings would be realized by outsourcing litigation; Moore did not undertake a cost study, for instance, or prepare a report. Moreover, Meachum points out, Moore did not discuss potential arrangements with outside counsel before firing Meachum. Taken together, those facts paint a picture that a reasonable factfinder could, arguably, read to suggest pretext.

Order at 15. Temple argues that "[t]he undisputed facts and record demonstrate conclusively that Mr. Moore did determine the cost savings in advance." Def. Mem. at 7. Temple points to several pieces of record evidence in support of its argument. Most relevantly, it calls the court's attention to Exhibit B of Temple's motion for summary judgment, which contains excerpts of Moore's deposition testimony. In particular, Temple notes the following testimony:

> [b]ecause if I was going to suggest to him [potential outside counsel] a flat fee, this would give me some measure of what was a reasonable number to suggest as a flat fee for handling a number of cases, whether it would be fewer or more. In other words, if he is—this is the way I thought about it. If he's handling six major cases over the course of a fiscal year, for approximately, what 31 to 44,000, taking the midpoint of that as 36,000, let's say, or 37,000, then if I

were to ask him if he would be agreeable to going forward by taking twelve cases for $75,000, say doubling the 37, that was my thought process.

> I wanted to try and reasonably predict what might be a range, that's all. But I didn't know what I would end up with. I'm not trying to suggest to you that I had any indication of where I would, in fact, end up. And based just on what was going on in the legal community, that more and more people were recognizing that it was a seller's market, the seller being the client, like the University, at this point in time.

Moore Dep., Ex. B to Def. Mot. for Summary Judgment at 109–10. Moore had spoken with "lawyers in the university-lawyering community" about information relating to alternate billing for attorney services. Id. at 101. He had "consulted ... with one outside lawyer in Philadelphia, and talked to him about **alternate billing arrangements ... [a]nd he had provided [Moore] with** some samples of alternate billing arrangements." Id. at 102. He had estimated the annual cost— "on a flat fee basis or some alternate basis"—of outsourcing litigation, and believed that even paying hourly rates might have resulted in cost savings. Id. at 103. At his deposition, Moore referred to typed notes that he had made around the time of his decision to outsource the litigation, in which he listed expenditures to outside counsel incurred up to that point. He testified that he had considered the notes while deciding whether to outsource the

---

responded on April 29, 1999 (docket #29), and Temple replied on May 4, 1999 (docket #30). Meachum argues that Temple's motion for reconsideration was untimely because it violated Local Rule 7.1(g), which provides that "[m]otions for reconsideration or reargument shall be served and filed within 10 days after the entry of the judgment, order or decree concerned." Under Meachum's calculations, that ten-day period expired on April 13, 1999. Meachum arrives at such a date by excluding intervening weekends under Fed. R. Civ. Pro. 6 (governing computation of time). Temple counters that Meachum has inappropriately left out the three additional days to which it is entitled by virtue of sub-

part (e) of the rule, which adds three days to the filing period when the Clerk of Court's office mails an order to the parties.

Prior courts in this district have held that Fed. R. Civ. Pro. 6(e) applies to Local Rule 7.1(g). See Walker v. Spiller, 1998 WL 306540 (E.D.Pa., June 9, 1998); Graco Children's Products, Inc. v. Century Products Co., 1996 WL 421966 at *37–38 (E.D.Pa. July 23, 1996) (Bechtle, J.). Meachum has provided me with no reason to disagree with my colleagues. I thus find that Temple had until April 16, 1999 to move for reconsideration; its April 15, 1999 submission was therefore timely.

litigation. *Id.* at 107–09. Temple claims that this quantum of evidence "demonstrate[s] conclusively that Mr. Moore did determine the cost savings in advance." Def. Mem. at 7.

Meachum disagrees, suggesting that it is reasonable to find pretext given the lack of a "committee to analyze" the outsourcing decision or a "report concerning [the outsourcing] decision." Pl. Mem. at 15–17. Nevertheless, he acknowledges that "Title VII does not require employers to act wisely or to make sound business decisions based upon careful planning." *Id.* at 16.

█ In the opinion accompanying the order, I determined that the absence of a cost study, a written report, or any discussions of "potential arrangements with outside counsel" could, taken together, be understood by a reasonable factfinder to suggest pretext. Opinion at 15. That may sometimes be true. However, given the facts argued by Temple in its memorandum in support of its motion for reconsideration—Moore's calculations about the possible costs of outsourcing litigation, his discussions with attorneys at other universities, and his consultation with an outside attorney—the lack of a cost study, a written report, and discussions with outside counsel do not present a sufficient ground for a finding of pretext by a reasonable factfinder.

█ "Title VII does not require employers to act wisely or to make sound business decisions based upon careful planning." Pl. Mem. at 16. Absent such a requirement, it cannot be said to require employers always to produce studies and reports before restructuring their workplaces.[2]

Accordingly, defendant's motion for reconsideration (docket # 27) is GRANTED and summary judgment is ENTERED on behalf of the defendant. The Clerk of Court shall MARK this case as CLOSED.

2.  I do not find Temple's other two arguments sufficient for reconsideration. Temple first argument—that it is implausible "to posit that race played a role in plaintiff's discharge given that [Temple] transferred plaintiff's duties to an independent contractor of the same race *and* at the same time offered another position ... *within the Office* ... to another African–American attorney." Def. Mem. at 2 (emphasis in original) merely reasserts the argument made in Temple's brief in support of its motion for summary judgment. Mere disagreement with this court's decision is not enough to grant a motion for reconsideration. *See Bermingham v. Sony Corp.,* 820 F.Supp. 834, 856 (D.N.J.1992), *aff'd* 37 F.3d 1485 (3d Cir. 1994).

Temple's third argument is that "plaintiff never received a salary increase that was truly merit based." Def. Mem. at 3. In support of this assertion, Temple points to a supplemental affidavit of George Moore—the University Counsel and Meachum's former supervisor. While the evidence is new—Moore swore to the affidavit on April 14, 1999—it is not newly discovered. None of the facts sworn to in the affidavit are of recent vintage, and Temple has presented no reason for this court to assume that Moore did not know of the facts sworn to in the affidavit when Temple submitted its motion for summary judgment. "Where evidence is not newly discovered, a party may not submit that evidence in support of a motion for reconsideration." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 909 (3d Cir. 1985).