firm.[3]

**Robert PANTON, Appellant**

v.

**Warden John NASH.**

**No. 07–4840.**

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit
LAR 34.1(a) March 11, 2009.

Opinion filed: March 12, 2009.

Before: FISHER, JORDAN and VAN ANTWERPEN, Circuit Judges.

OPINION

PER CURIAM.

Robert Panton, a federal inmate formerly confined at the Federal Correctional Institution at Schuylkill[1], filed this *Bivens* action against Warden John Nash, alleging that he was exposed to second-hand envi-

---

**1.** Panton was confined at FCI–Schuylkill from November 2000 until February 2004.

ronmental tobacco smoke ("ETS") in violation of his Eighth Amendment right to be free from cruel and unusual punishment. He sought compensatory damages, and to compel the establishment of a non-smoking unit at FCI–Schuylkill.[2] The District Court granted Nash's motion for summary judgment, and denied Panton's motion for reconsideration. For the reasons that follow, we will affirm.

Citing the Supreme Court's decision in *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the District Court first determined that Panton had failed to produce any objective evidence concerning the level of ETS at FCI–Schuylkill, or that the amount of ETS created an unreasonable risk. The District Court noted that:

> Although [Panton] was housed in the same cell with smokers when he first arrived at FCI–Schuylkill, it is undisputed that, immediately upon complaining of the exposure to smoke, Panton was removed from that environment and placed in a two-person cell with a non-smoker. On one other occasion he was housed with a smoker but he admits that this was not a problem because the inmate did not smoke in the cell. With respect to the air quality in the cells, despite plaintiff's contentions to the contrary, the cells were ventilated directly to the outside, not from cell to cell. And, the cells had windows that could be opened to allow fresh air to circulate through the cell.

Moreover, the District Court determined that Panton had failed to demonstrate that "during his stay at FCI–Schuylkill, he was treated for any condition or ailment brought about by his exposure to secondhand smoke." It further determined that "Nash's enforcement of a [smoking] policy that encouraged the separation of non-smoking inmates to the most practical extent indicates that [Nash] was not deliberately indifferent to any serious risk."

We have jurisdiction over the appeal pursuant to 28 U.S.C. § 1291, and exercise plenary review of the District Court's order granting summary judgment in Nash's favor. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir.2007). Further, summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We may affirm the District Court on any grounds supported by the record. *See Nicini v. Morra*, 212 F.3d 798, 805 (3d Cir.2000).

In order to establish an Eighth Amendment violation with respect to conditions of confinement, a prisoner must show that he has been deprived of "the minimal civilized measure of life's necessities," such as food, clothing, shelter, sanitation, medical care, or personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 303, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). The prisoner must also show that the deprivation was sufficiently serious and that the defendants acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety. *See Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. Specific to the instant case, a present injury claim based on exposure to ETS requires proof of (1) a sufficiently serious medical need related to ETS exposure;

---

**2.** In 2004, after Panton had been transferred to a different prison, indoor smoking was eliminated altogether at FCI–Schuylkill.

and (2) deliberate indifference by the prison authorities to that need. *See Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir.2003).[3] Assuming, arguendo, that Panton has satisfied the first component of the test, we nonetheless find that he has failed to satisfy the second, subjective component; i.e., we conclude that Nash was not deliberately indifferent to Panton's serious medical need with respect to ETS exposure, which is fatal to his Eighth Amendment claim.

"[D]eliberate indifference describes a state of mind more blameworthy than negligence," but "it is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835, 114 S.Ct. 1970. In addition, "prison officials who act reasonably cannot be found liable under the [Eighth Amendment]." *Id.* at 845, 114 S.Ct. 1970. Here, it is undisputed that Nash set out clear smoking regulations at the prison and made efforts to enforce that smoking policy. Indeed, Nash was actively engaged in limiting the presence of ETS as evinced by his removing of the "smoking area" designation from several of the common areas. When Panton first arrived at FCI–Schuylkill (before Nash began his tenure as warden), his request to be transferred out of a housing unit that permitted smoking was accommodated. Notably, Panton made no further requests for cell reassignment because of smoking issues during the time that Nash was warden.

Furthermore, Panton's medical records do not reveal any past or current complaints specifically demonstrating excessive ETS exposure. *See Fontroy v. Owens*, 150 F.3d 239, 243 (3d Cir.1998) (determining that *Helling* did not recognize a federal cause of action seeking monetary damages for the risk or fear of injury absent present physical harm). This is significant insofar as a prison official cannot be deliberately indifferent to a serious medical need if there is insufficient documentation to put the official on notice of that need. *See Farmer*, 511 U.S. at 837, 114 S.Ct. 1970 ("the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

There being no genuine issue of material fact, and because Panton's failure to show deliberate indifference with regard to ETS exposure entitles Nash to judgment as a matter of law, we will affirm the District Court's order granting summary judgment in favor of Nash. We will also affirm the District Court's denial of Panton's motion for reconsideration. *See Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985).

---

**3.** The District Court's opinion fails to adequately categorize Panton's ETS exposure claim as either a "present injury claim," a "future injury claim," or both. Normally, this would not be insignificant, as each has its own test. *See Atkinson*, 316 F.3d at 262–69; *see also id.* at 273 (Ambro, J., dissenting in part) ("ETS claims ... come in two varieties—present injury claims and future injury claims—and are measured by different standards"). Here, however, the District Court's misstep has no bearing on our disposition because our analysis turns on the deliberate indifference inquiry, mandated by both tests. That said, Panton's claim is best categorized as one alleging "present injury," given that he primarily seeks compensatory damages, and also that his request for injunctive relief was rendered moot almost immediately after he filed his complaint.