OPINION OF THE COURT
FISHER, Circuit Judge.
Berish Berger (“Berger”) appeals from the District Court’s order granting summary judgment to defendants Eli Wein-stein, Ravinder Chawla, 2040 Market Associates, LP, JFK BLVD Acquisition Partners, L.P., Mark Sahaya, Pine Projects, LLC, and World Acquisition Partners Corporation (collectively, “Appel-lees”) on the grounds that Berger lacks Article III standing to pursue his claims. See Berger v. Weinstein, No. 07-994, 2008 WL 3183404 (E.D.Pa. August 6, 2008). We will affirm.
I.
We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.
Berger’s claims revolve around five separate payments, totaling $36.5 million, made to the Appellees to purchase properties in Center City, Philadelphia, known as the River Cities property and 2040 Market Street. None of the payments was made by Berger directly; instead each payment was made to Appellees by a corporation in some way affiliated with Berger. The first payment of $12 million was made by Kil-bride Investments Limited (“Kilbride”), a Gibralter company owned by a discretionary trust established by Berger’s father. The second payment of $9.5 million came from Busystore, Limited (“Busystore”), a United Kingdom company whose directors are Berger, his wife, and his son. The sole owner of Busystore is Astralmain Limited, which Berger asserts is wholly owned by his family.
In January 2007, at Berger’s direction, Towerstates Limited (“Towerstates”) transferred $4 million, Ardenlink Limited (“Ardenlink”) transferred $6 million, and Bergfeld Co. Limited (“Bergfeld”) transferred $5 million to Pine Projects. Berger serves on the Board of Directors of all three of these Payees.[1] Ardenlink is a *753 charitable corporation without shareholders, while Berger owns one percent of the stock in Towerstates. Bergfeld is entirely owned by Tripform Limited, another company which Berger asserts is entirely owned by his family.
Berger testified in his deposition that all of the $36.5 million paid to the Appellees by the five different payee companies was money loaned to Berger that he is obligated to repay. No documents were placed in the District Coui't’s record that could provide any details regarding the terms of these loans, including when the loans were to be repaid and what, if any, interest was to be paid. In his deposition, Berger was unable to describe the terms of any loan agreement he had with the Payees.
Berger filed suit in March 2007 to recover damages based on the Appellees’ fraudulent misappropriation of the $36.5 million sent by the Payees. The District Court granted Berger a preliminary injunction to protect his interests in the River City and 2040 Market Street properties.
Appellees moved for summary judgment on a number of grounds. All Appellees argued Berger’s lack of standing was one ground for granting summary judgment. On August 6, 2008, the District Court granted the Appellees’ motions for summary judgment based on Berger’s lack of standing. The District Court did not address any of the motions for summary judgment on the merits because the standing issue was dispositive.
II.
The District Court exercised jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). We have appellate jurisdiction under 28 U.S.C. § 1291.
We review District Court orders granting summary judgment de novo. Alcoa v. United States, 509 F.3d 173, 175 (3d Cir.2007) (“We review the District Court’s grant of summary judgment de novo, applying the same standard the District Court applied.”).
III.
To establish standing under Article III of the United States Constitution, plaintiffs must demonstrate (1) an injury-in-fact; (2) a causal connection between the injury and the defendant’s conduct; and (3) the injury is capable of being redressed by the courts. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The District Court found that Berger did not suffer an injury-in-fact and, thus, the Court did not reach the final two prongs of the standing inquiry.
An injury-in-fact must be concrete and particularized, and “actual or imminent, not conjectural or hypothetical.” Id. at 560, 112 S.Ct. 2130 (internal quotations omitted). As we have explained, Article III standing assures that disputes are resolved “in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.” Pa. Prison Soc. v. Cortes, 508 F.3d 156, 161 (3d Cir.2007) (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 542-43, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986)).
Berger asserts that he has standing because his “uncontroverted” testimony establishes that the $36.5 million in payments made to the various Appellees was loaned to him by businesses associated with his family. Berger asserts that because he has an obligation to pay back those loans, he has suffered an injury-in-fact in the misappropriation of the money by the Appellees. Berger asserts that there are three ways the payments could be characterized: (1) as loans to Berger; (2) gifts or other income to Berger; or (3) direct investments by the Payees. Berger argues that the payments were loans. He further argues that regardless of how the *754 payments are characterized, he still has standing under Article III.
The Appellees argue that the absence of any loan documents or terms demonstrates that Berger does not have to pay back the money loaned to him by the Payees, and therefore he cannot establish an injury based on the loss of the $36.5 million.
A.
The payments made by the Payees were not loans to Berger. At least one of the five Payees, Towerstates, stated in its independent audit statement that there was “fundamental uncertainty” regarding the funds and that should those funds prove unrecoverable, Towerstates “would have a loss for the year.” As the District Court noted, this would be an odd statement to make if a person like Berger who believes his assets are worth over $100 million is personally liable for repayment of a loan. See Berger, 2008 WL 3183404, at *4. Three of the Payees, Ardenlink, Towerstates, and Bergfeld, did not account for the transfers as loans in their year end financial statements. Finally, a memorandum sent by accountant Mark Hepplewhite to Berger states that each of the three companies was treating the funds as an advance to Pipe Projects made on behalf of Busystore Limited. None of the companies was treating the funds as a loan to be repaid by Berger.
In addition to the absence of any documents either between the Payees and Berger or within the Payee’s internal structure showing that the transactions were loans, Berger’s own testimony demonstrates that the payments were not loans. Berger testified that he did not know when the money must be repaid, whether there was interest, or even how he would find out if there was interest. Id. Additionally, none of the alleged loan money was ever in Berger’s possession, rather it was paid directly to the Appellees by the Payees. The only evidence in the record that suggests that the payments are loans is Berger’s own testimony that he owed money to the Payees.[2] We agree with the District Court that the record before it established that the transactions between the five Payees and Berger were not loans.
B.
The District Court held that even if the payments from Payees to Appellees were loans to Berger, he still would not have standing because he has not shown the repayment of the loans is “certainly impending.” Whitmore v. Arkansas, 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). Berger does not know when, or even if, the Payees will demand payment on the alleged loans they made to him and he does not know the terms of such repayment. We agree -with the District Court that “Plaintiffs alleged debt is ‘too remote temporally’ for the Court to conclude that Plaintiff has shown an injury in fact.” Berger, 2008 WL 3183404, at *5 (citing McConnell v. Fed. Election Comm’n, 540 U.S. 93, 226, 124 S.Ct. 619, *755 157 L.Ed.2d 491 (2003)). As a result, even if the $36.5 million were a loan from Payees to Berger, Berger still has not established Article III standing.
C.
Berger next argues that if the $36.5 million was not loaned then it was a gift or other income provided to him by the Payees. Under this theory, Berger received the gift when each Payee made its payment to the Appellees and therefore when it was allegedly misappropriated, the loss incurred to Berger and not to the Payees. Berger states “if Berger never had to repay the funds, then the fact that the funds lost in the fraud were solely Berger’s is even clearer.” (Berger Bl. Br. at 21.) No testimony or evidence was presented suggesting that the $36.5 million payments were gifts from the Payees, and there is thus no basis for concluding that the payments were gifts or other income to Berger. Accordingly, we find that the payments were not gifts or other income to Berger.
D.
Appellees contend that the payments were direct investments made by the family businesses. This position is supported by the great weight of the evidence, including the lack of any loan terms between Berger and the family businesses, the Hepplewhite memorandum, and the failure of Payees to account for the payments as loans.
Berger argues that even if the payments are direct investments, he nonetheless has standing “based on his status as a shareholder, director, family member and the one person directly deceived by the defendants’ fraudulent misrepresentations.” (Berger Bl. Br. at 25.) Berger is a 1% owner and Board Member of Towerstates, a Board Member of Bergfeld, Ardenlink, and Busystore, and a potential beneficiary of the trust that owns Kilbride.
Berger contends that his derivative injury as an owner/director of Towerstates is enough to confer Article III standing. For this proposition, Berger cites Whelan v. Abell, 953 F.2d 663, 671-72 (D.C.Cir.1992), a case which held that a shareholder had Article III standing to assert a corporation’s claims when the corporation was small and closely held.
Our precedent does not draw such a distinction between a shareholder of large corporations and a shareholder of small closely held corporations for the purpose of standing. To the contrary, we have held “that a shareholder (even a shareholder in a closely-held corporation) may not sue for personal injuries that result directly from injuries to the corporation.” In re Kaplan, 143 F.3d 807, 811-12 (3d Cir.1998). More recently we have held that “individual shareholders do not have standing to assert directly state-law claims alleging harm to a corporation.” LaSala v. Bordier et Cie, 519 F.3d 121, 131 (3d Cir.2008).
Berger asserts that he must have standing to sue on behalf of Ardenlink, Bergfeld, Busystore, and Towerstates because he is on the Board of Directors of each and as the driving force behind the investments in Appellees’ real estate ventures he could be subject to liability in suits filed by the companies or their shareholders. Berger has not been sued by Ardenlink, Bergfeld, Busystore, or Tow-erstates, nor has he been sued by any officer, director, or shareholder affiliated with the companies. Berger is in essence seeking a type of advance indemnity or contribution against a future lawsuit. We have held that “a cause of action for contribution does not arise until the party seeking contribution has paid, or had a judgment rendered against him or her for, more than his or her fair share of a common liability.” Sea-Land Service, Inc. v. *756 United States, 874 F.2d 169, 171 (3d Cir.1989). Until Berger actually has a judgment rendered against him based on his liability to the Payees or their shareholders resulting from his role in influencing the payments to the Appellees, he cannot seek contribution or indemnity.[3] Any injury to Berger that may result from a potential future lawsuit is hypothetical and cannot confer Article III standing.
Likewise, Berger does not have standing to bring a claim on behalf of Kilbride. The District Court found that “Berger has no relationship at all with Kilbride.” Berger, 2008 WL 3183404, at *2. Berger certainly is not an owner, director, shareholder, or officer of Kilbride. There is no basis for finding that Berger has standing to assert Kilbride’s claims.
In sum, Berger does not have Article III standing to bring claims on behalf of any of the Payees.
Finally, Berger contends that he has established “an identifiable trifle” of actual injury, and that any additional concerns regarding his right to recover go to whether he is the real party in interest. We need not reach the argument of whether Berger is a real party in interest because he has not established Article III standing.[4]
IV.
For the foregoing reasons, we will affirm the order of the District Court.

. Hereafter the five entities making payments to Appellees (Kilbride, Busystore, Ardenlink, Bergfeld, and Towerstates) will be jointly referred to as ''Payees”.

. The District Court did not address in its opinion the statement of James Levy who had represented Kilbride in its $12 million transaction with Berger. Levy stated his belief that the funds were loaned from Kilbride to Berger. It is possible, as Weinstein and Pine Projects note in their briefs, that the District Court released its summary judgment order before it received Levy's statement given that the statement was delivered on the same day as the summary judgment order. Appellees raise a number of reasons why the Levy statement would be inadmissible or not credible in a trial proceeding. We note that Berger did not move for reconsideration in light of the new evidence, and therefore Levy’s statement was not properly part of the record in the District Court. Accordingly, we will not rely on Levy's statement on appeal. See Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985).

. We imply nothing about whether a future suit by Berger for contribution or indemnification would be well-founded in law or fact.

. The assignments Berger received from Payees do nothing to establish standing under Article III because standing must be established as of the time the lawsuit is brought. See Davis v. FEC, — U.S. -, 128 S.Ct. 2759, 2769, 171 L.Ed.2d 737 (2008).